MARY E. LLOYD and Another v. ANNA L. SIMONS and Others.[1]

July 10, 1903.

Nos. 13,522, 13,523—(178, 181).

### Lost Deed—Burden of Proof.

In an action to prove and to establish a deed alleged to have been unrecorded and lost, as against defendants, whose rights are asserted under a recorded, but subsequently executed and delivered, deed of the premises, the burden of proof is first upon the plaintiff to establish prima facie such deed and its loss, and then, under the provisions of G. S. 1894, § 4180, is upon the defendant to show, either as an alleged owner or as a mortgagee, his own good faith, or that of a predecessor in interest, and also that the property was purchased or the mortgage taken for a valuable consideration.

### Evidence.

The testimony of certain witnesses for the plaintiffs as to conversations had with third parties examined and considered. *Held* to have been improperly received, and to have been prejudicial to defendants.

### Register's Reception Books.

Entries made in grantor's and grantee's reception books, kept in the office of the register of deeds, showing to whom recorded instruments have been delivered, are inadmissible in evidence as proof of such delivery.

### Husband and Wife.

Section 5659, G. S. 1894, which provides for the examination of parties to an action at the instance of an adversary, does not qualify or modify section 5662, subd. 1, which prohibits the examination of a husband for or against his wife, without her consent, and the examination of a wife for or against her husband, without his consent.

### Husband as Adverse Witness.

*Held*, in the case at bar, that it was error for plaintiffs to call and examine the defendant husband, as an adverse party, in respect to the interests of his wife in the premises; due objection having been made by her counsel to such examination. But the error was not prejudicial, because the husband was afterwards called as a witness by defendants' counsel, and fully examined upon the same matters.

[1] Reported in 95 N. W. 903.

Action in the district court for McLeod county to prove and establish an unrecorded lost deed and to determine the adverse claims of defendants to the land therein described. The case was tried before Qvale, J., who found in favor of plaintiffs. From a judgment entered pursuant to the findings defendants Anna L. Simons and husband and M. E. Hodder separately appealed. Reversed, and new trial granted.

*F. R. Allen* and *A. B. Darelius,* for appellants.

*John J. McHale, M. C. Brady,* and *A. V. Rieke,* for respondents.

COLLINS, J.

This was an equitable action, brought to prove and establish an unrecorded and alleged lost deed of eighty acres of land, which deed, it was claimed, was made, executed, and delivered in the summer of 1877 by one William F. Furlong to James Edwards, and also for the purpose of having the title to the eighty acres declared to be in plaintiffs, and of having it adjudged that defendants, Henry L. and Anna L. Simons, M. A. Zella, M. E. Hodder, and Isaac W. Arnold, had and have no right, title, or interest therein.

The record is very complicated, because a great deal of irrelevant and useless testimony was received by the court below, trying the case without a jury. Upon its findings of fact the court made conclusions of law in accordance with the prayer for relief found in the complaint, and, upon judgment being entered as thereby ordered, this appeal was taken by defendants Anna L. and Henry L. Simons and M. E. Hodder.

It was shown by the records in the office of the register of deeds, and it stands conceded, that Furlong was the owner of the property on June 6, 1877, on which day he executed and delivered to one Yerkes a mortgage thereon to secure the sum of $80, which mortgage was duly recorded on the same day. It further appears from this record that on August 14 one James Edwards and his wife executed and delivered to Michael Lloyd, father of these plaintiffs, a warranty deed of the eighty acres, which was duly recorded September 14, the consideration named therein being $900; and, further, that the land was thus conveyed subject to the Yerkes mortgage. July 13, 1878, this mortgage was satisfied of record, and it was shown aliunde that the amount due thereon was paid by Lloyd.

The record also shows that on September 12, 1882, Furlong conveyed the eighty.acres by warranty deed to one Dewees; the consideration being stated at $800, and an undescribed mortgage for $400 being excepted from the covenants in the conveyance (this instrument was not recorded until April 25, 1891, about nine years after its execution); that on May 15, 1891, Dewees and his wife conveyed the eighty acres by warranty deed to one John Luiten, said deed being recorded July 21; that, as part of the same transaction Luiten mortgaged the premises to Dewees for the sum of $600, to secure payment of part of the purchase price, evidenced by a promissory note; that this mortgage bore even date with the deed, and was recorded in 1891; that Dewees afterwards executed a power of attorney to one Knight, which authorized the latter, among other things, to make a transfer and assignment of the note' and mortgage, and thereupon Dewees, by his attorney in fact, Knight, under date of August 1, 1891, assigned and transferred both note and mortgage to one Milton Silsby, which assignment was recorded June 10, 1895; that at the same time there was recorded a transfer and assignment of the note and mortgage from Silsby to the Missionary Society of the M. E. Church; that on November 30, 1900, the society assigned the note and mortgage to defendant M. E. Hodder, which assignment was recorded; that on January 5, 1892, Luiten, in writing, assigned all his right, title, and interest in and to the land, "subject to redemption by January 5, 1892," to one J. P. Blake, and this instrument was recorded December 9 of the same year. It is conceded that this assignment was in fact a mortgage to secure the payment of $140.

The record further disclosed that on June 29, 1893, Blake and his wife conveyed the eighty acres by quitclaim deed to defendant Anna L. Simons, which deed was placed on record July 7, 1893, and that on the same day there was recorded another quitclaim deed, of date February 5, 1893, in which Luiten and his wife were grantors, and Mrs. Simons grantee; that subsequently, in 1901, Hodder foreclosed the Luiten mortgage, under the power, becoming the purchaser himself at the sale for the sum of $1,168.26, the amount claimed to be due; that the sheriff's certificate of sale executed and delivered to him bears date April 5, 1902, and, with other papers in connection therewith, was recorded April 14, 1902. The regularity of this foreclosure, so far as form is concerned, is not questioned.

The plaintiffs, Mary E. and John W. Lloyd, are the children and heirs at law of Michael Lloyd, grantee in the alleged lost deed, according to a decree of distribution of his estate made in the probate court; said grantee having died prior to 1897. The only appellants from the judgment are Hodder and Mr. and Mrs. Simons. Exactly why I. W. Arnold was made a defendant does not appear; and his interest, if any, in the land, does not seem to have been passed upon below. It is not shown whether defendant Zella appeared or answered in the case, but his rights were disposed of in express terms by the judgment.

The principal question litigated in the court below was as to the execution and delivery of the alleged lost deed. It was claimed at the trial that in the month of June, 1877, Furlong executed and delivered to James Edwards a warranty deed of the eighty acres for an expressed and then paid consideration of $500, which deed was, in terms, made subject to the Yerkes mortgage of $80, and, further, some three months afterwards this deed was in the possession of one Pillsbury, alleged to have then been the agent of Michael Lloyd, and that soon aftterward it was lost, while in Pillsbury's possession. There was testimony, of more or less weight, tending to support these claims. The court below found the facts to be that such a deed was made, executed, and delivered by Furlong, then owner of the land, to James Edwards, who conveyed to Lloyd, as before stated, and that this deed was lost, as claimed. It also found that none of the subsequent purchasers of the land, save Lloyd, purchased in good faith or for value. And it made the same finding as to Dewees, the mortgagee named in the Luiten mortgage, and as to each of the subsequent assignees, including Hodder. For the purpose of this opinion, we shall assume, without so deciding, that the trial court was justified in its findings of fact, and that they warranted the conclusions of law. Such an assumption is proper at this time, in view of the fact that there were a number of errors committed by the court below in its rulings upon the admission of evidence, and that a new trial must be had.

It is to be noticed that the title asserted by the defendants is wholly based and depends upon the deed in which Furlong was the grantor, and Dewees was grantee. This deed bore date in 1882, but it was not placed upon record until 1891, nine years afterwards. If the grantee of that deed, or either one of his subsequent grantees, bought the land

in dispute for a valuable consideration and bona fide (that is, without notice of the unrecorded deed, and without knowledge of any fact sufficient to put a prudent man upon inquiry, which, if prosecuted with ordinary diligence, would have led him to actual notice of an asserted right or title to the land in conflict with that he was about to purchase), he was a purchaser in good faith and for value. If he had the notice or knowledge above mentioned, it was incumbent upon him to make inquiry, and, failing so to do, he would be held guilty of bad faith. The burden of proof was first upon plaintiffs to establish prima facie the execution and delivery of the deed, and its loss, and then the burden of showing good faith when purchasing the land, and the payment of a valuable consideration, was upon the person who asserted it, and whose title depended upon it. This is the rule of evidence laid down for such cases in G. S. 1894, § 4180. It was therefore incumbent upon such of the defendants as claimed title to this land to show that either Dewees or Luiten or defendant Anna L. Simons was a good-faith purchaser for a valuable consideration; it being assumed, as before stated, that the execution and delivery of the alleged deed and of its loss had been established by the proofs.

These rules as to good faith and a purchaser for value and the burden of proof apply with equal force to the claim made by defendant Hodder as an assignee of the Luiten mortgage. It was required of him to show either that Dewees was a good-faith purchaser for a valuable consideration, or that Silsby, his assignee, or the missionary society, assignee of Silsby, or himself, as assignee of the society, purchased the mortgage in good faith and for a valuable consideration. Without regard to the rule as to the burden of proof, plaintiffs' counsel attempted to show at the trial, and affirmatively, that neither Dewees nor Luiten nor Mrs. Simons purchased in good faith or for a valuable consideration, and also that the assignees of the original mortgagee were not good-faith purchasers, and did not part with a valuable consideration for their respective assignments. This led to the introduction of much irrelevant and considerable inadmissible and prejudicial testimony.

1. Among other witnesses was one Leonard, an attorney at law, whose testimony was taken by deposition, who was permitted to testify that at Glencoe, in 1891, where he had gone to make some investigations concerning this transaction, he met one Dean, of the firm of

90 M.—16

Knight & Dean. The witness testified that he had certain papers with him at the time, relating to the controversy, furnished him by Mrs. Lloyd, whose husband—grantee in the alleged lost deed—was then living. He was then allowed, under objections made by defendants' counsel, to relate and repeat statements made by Dean to him at that time as to the relations of Mr. Dewees with the firm of which Dean was a member. This firm appears to have been in the banking and insurance business at Glencoe from about the year 1883 to 1899. Some of the statements which Leonard was permitted to repeat were made about the deed from Furlong to Dewees, and as to its whereabouts from the time it was dated, in 1882, until it was recorded, in 1891, and some of them referred to the satisfaction and discharge of the Yerkes mortgage. Evidently this testimony was introduced for the purpose of showing that Knight & Dean were agents for Dewees at or about the time the Furlong-Dewees deed was executed and delivered, and for ten years afterwards, which would include the day it was recorded, and from which it might be argued that the knowledge of Knight & Dean, or either, as to Edwards' rights, should be attributed to Dewees, and should bind him, under the well-known rule of law that notice to or knowledge of an agent is notice to and binds his principal.

This testimony was certainly prejudicial to defendants' case. It was the rankest kind of hearsay. Dean was not a party to the suit, nor was he in any way interested in the result, nor was he acting for Dewees or for any of the defendants in any capacity at the time of the conversation with Leonard. Nor had it been shown that his firm ever acted for Dewees, except as a collection agent.

There was further testimony of this import, and equally as objectionable and prejudicial. Mrs. Edwards, widow of the grantee in the alleged lost deed, was permitted to testify that she called upon Mr. Knight about 1885, and had a conversation with him respecting the loss of the deed. It is not claimed or shown that Knight ever saw or heard of this instrument, or that he ever had it in his possession. She was allowed to testify, against objection, that Knight, after inquiries about other papers concerning other property, said to her,

"By the way, do you know anything about that lost Furlong deed?"

She replied, according to her testimony, that she did not. She further testified that Knight then "laughed, and did not say any more." There is not a particle of testimony to show that, in the preparation or procurement of the deed from Furlong to Dewees, Knight or the firm of Knight & Dean took any part, or that either of the partners ever saw it or was aware of its existence. There was no claim that Knight or Dean ever heard of the lost deed, except as may be inferred from the former's inquiry of Mrs. Edwards. This conversation with Knight was eight years after the execution of the lost deed, and we are at a loss to discover upon what theory it was considered to be admissible.

Counsel for the plaintiffs contended that all of this testimony was competent and relevant in corroboration of other evidence as to the agency of Knight & Dean, and also that it was proof of notice of Lloyd's right to them, as agents of Dewees, at the time the Luiten-Dewees deed was made, and also ten years later, when this deed was recorded. That Knight & Dean were agents of Dewees for the purpose of loaning money and for the collection thereof had no tendency to show that they were his agents for the purpose of buying land, or that they acted as his agents in this transaction, or that he was a bad-faith purchaser, or that he had notice, through them, actual or of a character to put him upon inquiry, as to Lloyd's rights. Mrs. Lloyd was also permitted to testify as to statements made to her by Mr. Pillsbury some years before he died. In so far as this testimony tended to establish the loss of the deed, it might have been admissible, but it went much further, and to this extent it should have been excluded.

2. The court below also permitted the grantors' and grantees' reception books, kept in the office of the register of deeds, to be introduced for the purpose of showing to whom certain instruments had been delivered after record. There were two valid objections to the introduction of this testimony: First. The record kept by the register of deeds as to whom recorded instruments have been delivered is not made evidence of the fact under the statute. Evidently that portion of the reception books is kept solely for the information and convenience of the register, and not for the purpose of making such entries evidence of what is therein contained. Second. These instruments were all recorded prior to the day the alleged lost deed was executed and delivered. It was error to receive these entries.

3. Under the provisions of G. S. 1894, § 5659, counsel for the plaintiff called defendant Henry C. Simons as a witness, and then, notwithstanding an objection made in behalf of Mrs. Simons, proceeded to examine him, as an adverse party, concerning her good faith when purchasing from Luiten and Blake, and as to other matters personal to her. While it was perfectly proper to call Simons as an adverse party, and then to examine him respecting his own interest in the property, if any, a further examination was in direct violation of the provisions of section 5662, subd. 1, and was prejudicial. Section 5659 does not affect or modify the section last mentioned. But the error was cured by the fact that subsequently Mr. Simons was called in behalf of all of the defendants, and fully interrogated upon these same matters by their counsel. This rendered the admission of his testimony error without prejudice. We refer to this point particularly because it may arise upon a second trial.

4. It was also error, as to Mrs. Simons, to permit the witness McHale to testify to the conversation with Mr. Simons, when he served the summons upon him, as to the legal effect of the knowledge of or notice to Knight & Dean of the lost deed.

Order reversed and new trial granted.