MARY E. LLOYD and Another v. ANNA L. SIMONS and Others.[1]

February 16, 1906.

Nos. 14,607, 14,608—(173, 174).

**Pleading—Remedy at Law.**

This is an equitable action to establish an unrecorded lost deed of land and to cancel subsequent adverse deeds thereof. *Held*, an objection to a complaint in equity that the plaintiff has an adequate remedy at law must be taken by demurrer or it is waived. The complaint herein does not show upon its face as a matter of law that the plaintiffs, or those through whom they claim, were guilty of such laches as to disentitle them to any relief.

**Laches.**

The question of laches is to be decided upon the circumstances of each particular case. It is one addressed to the sound discretion of the trial judge in cases where the evidence is conflicting, or, if the facts be undisputed, fair-minded men might reasonably draw different conclusions. Such was the question of laches in this case, and there was no abuse of discretion by the trial judge.

**Lost Deed.**

One who relies upon a lost deed to sustain his title must establish its execution, loss, and the material parts thereof by clear, satisfactory, and convincing evidence. The findings of the trial judge to the effect that the deed here in question was executed, but was lost before it was recorded, and that neither the defendants nor any person through whom they respectively claim were subsequent purchasers of the land or mortgagees in good faith, are sustained by the evidence.

**Evidence.**

There were no reversible errors in the rulings of the trial court as to the admission of evidence.

Action in the district court for Renville county to establish an unrecorded lost deed and to determine the adverse claims of defendants to the land therein described. The case was tried before Powers, J., who found in favor of plaintiffs. From a judgment entered pursuant to the findings, defendants appealed. Affirmed.

[1] Reported in 105 N. W. 902.

*F. R. Allen, A. B. Darelius* and *S. R. Child,* for appellants.
*John J. McHale* and *A. V. Rieke,* for respondents.

START, C. J.

This is the second appeal in this action. Reference is here made to the opinion of this court on the former appeal (90 Minn. 237, 95 N. W. 903) for a full statement of the facts. The action was brought in the district court of the county of Renville to establish an unrecorded lost deed of eighty acres of land in that county and to cancel subsequent recorded adverse deeds. The cause was tried by the court without a jury, findings of fact in favor of the plaintiffs were made, and as a conclusion of law judgment was ordered for them for the relief demanded. Judgment was so entered, from which the defendants severally appealed.

1. The defendants' first contention is that the complaint does not state a cause of action for equitable relief, for the reason that the plaintiffs have an adequate remedy at law, and, further, that the complaint shows upon its face such unexcused laches as to disentitle the plaintiffs to any equitable relief.

This question was first raised in the brief of counsel on this appeal; that is, after two trials of the action on the merits. Therefore the complaint must be held sufficient, if by any reasonable intendment the facts necessary to constitute a cause of action may be inferred. Commonwealth Title Ins. & T. Co. v. Dokko, 71 Minn. 533, 74 N. W. 891; Brown v. Fitcher, 91 Minn. 41, 97 N. W. 416. It is quite clear from the allegations of the complaint that the plaintiffs have no adequate remedy at law; but, this aside, an objection to a complaint in equity that the plaintiff has an adequate remedy at law must be taken by demurrer or it is waived. It would be intolerable injustice to permit a defendant, after he had answered the complaint and after two trials of the cause on the merits, to raise for the first time the objection that the plaintiff had an adequate remedy at law. 6 Enc. Pl. & Pr. 434. The complaint does not show upon its face as a matter of law that the plaintiffs or those through whom they claim have been guilty of such laches as to disentitle the plaintiff to any relief. The complaint states a cause of action for equitable relief. Sanborn v. Eads, 38 Minn. 211, 36 N. W. 338.

A further claim is made in this connection to the effect that the whole evidence so conclusively shows laches that the trial court erred in grant-

ing the plaintiffs any relief. Laches in a general sense is such negligence in bringing an action or otherwise asserting one's right as will preclude him from obtaining equitable relief. The question of laches is to be decided upon the particular circumstances of each case. Hence it is one addressed to the sound discretion of the chancellor or trial judge in cases where the evidence is conflicting, or, if the facts be undisputed, fair-minded men might reasonably draw different conclusions therefrom. 1 Thompson, Trials, § 1437; 16 Cyc. 152; 5 Words & Phrases, 3969; 12 Enc. Pl. & Pr. 829. Mere delay does not constitute laches, unless the circumstances were such as to make the delay blamable. Whether the delay has been culpable or not depends upon many circumstances, such as knowledge of the facts, infancy or other personal disability, mistake, undisturbed possession, and the consequences of the delay to others. Sanborn v. Eads, supra; Hayes v. Carroll, 74 Minn. 134, 76 N. W. 1017; Wall v. Meilke, 89 Minn. 232, 94 N. W. 688; 16 Cyc. 167. The practical question in each case is whether there has been such an unreasonable delay in asserting a known right, resulting in prejudice to others, as would make it inequitable to grant the relief prayed for.

We have considered the evidence relevant to the question of laches in this case, and have reached the conclusion that the question was not one of law, but one addressed to the sound discretion of the trial judge, and, further, that there was no abuse of discretion in this case.

2. The trial court found that the deed, by virtue of which the plaintiffs claim title to the land, was executed, but was lost, without ever having been recorded. The defendants challenge this finding on the ground that there is no evidence whatever to sustain it.

There is evidence tending to support the finding, and the only question to be determined in this connection is whether the evidence is sufficient within the well-settled rule that one who relies upon a lost deed to sustain his title to land must establish its execution, loss, and the material parts thereof by clear, satisfactory, and convincing evidence. It is conceded that on June 1, 1877, William F. Furlong was the owner of the land, subject to a mortgage thereon to secure the payment of $80 and interest. It is the claim of the plaintiffs that Furlong some time in June, 1877, conveyed the land by warranty deed, subject to the mortgage, to James Edwards, and that this deed was never recorded, but

was lost. This alleged lost deed is the one here in question. On August 14, 1877, James Edwards and his wife, Alice, by warranty deed, in form, at least, conveyed the land, subject to the mortgage, to Michael Lloyd, the father of the plaintiffs. This deed was duly recorded September 14, 1877. The evidence clearly is sufficient to establish the fact that Michael Lloyd entered into possession of the land under his deed from Edwards in 1878, and continued in possession thereof to September, 1891; that he paid $900 for the land, including the mortgage, and paid the taxes on the land from year to year up to the year 1893, with the exception of three years; and, further, that he died in the year 1896, leaving his children, the plaintiffs, then of the respective ages of sixteen and seventeen years, and his widow, as his sole heirs at law. The land was distributed to them as a part of his estate. The widow conveyed her interest in the land to the plaintiffs before the commencement of this action.

Furlong was insane at the time of the trial, and Edwards died some four years before the commencement of the action. His widow, Mrs. Alice Edwards, was called as a witness to prove the execution of the lost deed. She testified to the effect that her husband was in the business of buying and selling land; that he could not read or write, and she assisted him in his business, reading all of his legal papers for him, and sometimes writing for him; that in June, 1877, he gave her three documents, which she read, one a United States patent of the land in question, one an abstract of the title of the same land, and the other a warranty deed from William Furlong to her husband, James Edwards; that she put the deed and other papers away in a trunk, and about two months thereafter she gave them to her husband; that she last saw the deed at the time she and her husband executed the warranty deed of the land to Michael Lloyd; and that the Furlong deed, with the patent and abstract, were then delivered to him. Mrs. Lloyd was called as a witness, and gave testimony tending in some important particulars to corroborate that of Mrs. Edwards. If the Furlong deed was ever executed as claimed, the evidence is ample to sustain a finding that it was lost and cannot be found. Mrs. Edwards' testimony as to the execution, contents, and the acknowledgment of the deed was substantially as follows, namely:

On the outside of the deed it said: "Warranty Deed from William Furlong to James Edwards." Then the inside of the deed was: "This indenture, made at a certain date in June, 1877, between William F. Furlong, of McLeod county, and James Edwards, the second party, of McLeod county, for and in consideration of the sum of $500 in hand paid to them for this piece of land"—and then went on about the description of the land in writing. It was the west ½ of the southeast ¼ of section 2, township 115, range 32, Renville county, Minnesota, (the land in question), subject to a mortgage of $80. It went on further to state that he was lawfully seised of the same piece of land, and that he had good right to sell and transfer the same, and that it was free of all incumbrances except the mortgage of $80, and that he would warrant and defend the title to the same against all lawful claims. J. V. B. Lewis' name was at the bottom of it at the side, and the notary public seal was on the back of it. On the back of it, it stated that "personally appeared before me, the said William F. Furlong," and that he had signed this deed of his own free act and will at the day and date above stated. J. V. B. Lewis' name is at the bottom as notary public. * * * It was signed by J. V. B. Lewis' name, the notary public, and also Furlong's name, William F. Furlong. He signed it. His name appeared at the bottom of the deed, at the right-hand corner. * * * It was signed by two witnesses. One was J. V. B. Lewis' but I don't remember the other witness' name. The names of the two witnesses appeared on the left-hand side at the bottom of the page where it reads, "Signed, sealed, and delivered in presence of." I compared the patent and the abstract, Exhibits A and B, with the deed I have just described. I am able to state that the patent and the abstract described the same land that was described in the Furlong deed. It was the same. This is the deed which I have testified as having been lost.

It is urged that this does not show that the deed was acknowledged, because the word "acknowledged" was not used by the witness in her testimony; that it does not show that the notary knew the person ap-

pearing before him, or on what part of the deed the seal was, or of what state or county the seal was. It is the policy of the law to uphold certificates of acknowledgment, and where substance is found obvious clerical errors and all technical omissions and defects will be disregarded. Brunswick-Balke-Collender Co. v. Brackett, 37 Minn. 58, 33 N. W. 214; Larson v. Elsner, 93 Minn. 303, 101 N. W. 307. The only fair inference that can be drawn from the testimony is that the deed bore the certificate of the notary to the effect that the grantor personally appeared before him and acknowledged the instrument. We know of no rule of law that requires the notarial seal to be impressed upon any particular part of the deed. A notary public is only required to authenticate his official acts with his official seal. The testimony of the witness justifies the conclusion that the certificate of acknowledgment in question was so authenticated. The evidence in this case is sufficient to sustain a finding that the deed was acknowledged and executed by Furlong.

The defendants contend that this testimony, if it be accepted as true, does not show that a deed was executed which conveyed the land, for the reason that it does not show who the grantor was. It is quite apparent from the evidence that it was the owner of the land, William F. Furlong, who made the deed to James Edwards, the party of the second part. It is also claimed that the evidence does not show that any land was conveyed by the deed. We hold otherwise. It is true the witness did not use the word "convey"; but it clearly appears from the whole testimony that the deed the witness was testifying about was a deed of the land in question.

Again, it is urged that the inherent improbability of the testimony as to the lost deed and its contents is so great that it must be rejected. The credibility to be given to the witnesses and their testimony was a matter largely within the discretion of the trial judge, who saw and observed them. The judge who heard this case on the first trial found from the evidence that a deed of the land in question was executed as claimed by the plaintiffs to their father, which was lost and never recorded. Another judge heard the case on the second trial, and from the evidence reached the same conclusion. If credit be given to the testimony of Mrs. Edwards, then the evidence to support the finding is clear, satisfactory, and convincing. Two careful and learned trial judges, acting

independently of each other, have each found the testimony credible. Upon a consideration of the whole evidence on this question, we hold that it sustains the finding as to the lost deed and its contents.

3. The only defendants claiming any interest in the land adverse to the plaintiffs are the defendant Anna L. Simons as owner and the defendant Mabel E. Hodder by virtue of an assignment of a mortgage thereon and a foreclosure thereof. The defendant Henry L. Simons has no interest in the land, except as the husband of Anna L. Simons. He, however, acted as her agent in reference to her purchase of the lands, and any notice or knowledge which he then had of the plaintiffs' claim to the land is imputable to her.

Some five years after William Furlong executed the deed to Michael Lloyd, and on September 12, 1882, he executed a deed of the land to Thomas B. Dewees. This deed was not recorded until nearly nine years after its execution; that is, on April 25, 1891. Thomas B. Dewees on May 15, 1891, made a deed of the land to John H. Luiten, who gave to Dewees a mortgage thereon to secure $600 of the purchase price of the land, which with the deed was duly recorded. This mortgage was by mesne assignments vested in the defendant Hodder. The assignment to her was recorded February 1, 1902, and was foreclosed by her on April 5, 1902. She was the purchaser of the land at the foreclosure sale. John Luiten executed a quitclaim deed of the land, dated and acknowledged on February 26, 1893, to the defendant Anna L. Simons, which was recorded July 7, 1893. This action was commenced and notice of lis pendens filed February 25, 1902.

The trial court found that neither Mrs. Simons nor any other parties through whom she claims the land was a purchaser in good faith without notice, and, further, that neither the defendant Mrs. Hodder nor any of the parties through whom she claims was a bona-fide mortgagee or assignee of the mortgage without notice. The defendants here insist that neither of these findings is sustained by the evidence. The burden was upon the defendant to affirmatively establish that they were purchasers in good faith without notice. Lloyd v. Simons, 90 Minn. 237, 95 N. W. 903. Whether the defendants sustained this burden was a question of fact to be determined by the trial judge, and his finding thereon is conclusive on appeal, if there is any evidence reasonably tending to support it. Carver v. Bagley, 79 Minn. 114, 81 N. W. 757. We

97 M.—21

are of the opinion that within this rule the evidence is sufficient to support the finding as to each defendant.

4. The defendants have assigned and argued several alleged errors of the trial court in its rulings as to the admission of evidence. We have considered each of them, and find that some evidence was received on the trial which was not technically competent. It does not, however, necessarily follow that the judgment must be reversed. Where a cause is tried by the judge without a jury, greater latitude is permissible in the admission of evidence than in a case tried by a jury. It is only in rare cases that his findings of fact will be reversed because incompetent or immaterial evidence is received, if there be sufficient competent evidence to support them. We hold, upon the whole evidence in this case, that there were no reversible errors in the rulings of the trial court as to the admission of evidence.

Judgment affirmed.