RAY A. BRIGGS AND ANOTHER v. MERCHANT P. BUZZELL.[1]

July 3, 1925.

No. 24,729.

**Definition of laches.**
1. The pith of the doctrine of laches is unreasonable delay in enforcing a known right. In a general sense it is such negligence in asserting a right as will bar one from obtaining equitable relief. Whether the delay was culpable or not depends on many circumstances, among which are actual or imputable knowledge of the facts and resulting prejudice from the delay, either to the defendant or to those who have equities to be protected.

[1]Reported in 204 N. W. 548.

**Negligent ignorance of facts no excuse for laches and greater diligence required when facts are shown by public record.**

2. The time within which to sue begins to run, not from the perpetration of a fraud, but from the discovery thereof. Ignorance of the facts due to negligence does not excuse laches. The defrauded party should make such inquiry and investigation as the known facts and circumstances reasonably suggest or permit. A greater degree of diligence is required where the facts are a matter of public record and an inspection of the record is suggested by ordinary prudence.

**Evidence insufficient to show plaintiffs had lost right to sue for rescission of contract.**

3. The evidence did not warrant a finding that, by their laches, plaintiffs had lost their right to maintain a suit for the rescission of a contract obtained by the defendant's misrepresentation.

1. See Equity, 21 C. J. pp. 210, § 211, 211, § 211, 223, § 219, 244, § 242.

2. See Equity, 21 C. J. pp. 245, § 242, 247, § 244, 248, § 244, 250, § 247.

3. See Cancellation of Instruments, 9 C. J. p. 1256, § 195.

Action transferred to the district court for Hennepin county. The case was tried before Waite, J., who ordered judgment in favor of defendant. Plaintiffs appealed. Reversed.

*O'Brien, Horn & Stringer,* for appellants.

*Theodore W. Thomson,* for respondent.

LEES, C.

This is an action for rescission of a contract for the purchase of a motion picture theater near the State University. The plaintiffs were defeated and have appealed from the judgment. The jury's determination of certain specific issues was adopted by the court, with additional findings which would entitle plaintiffs to judgment, save for the court's finding of laches. The sole question presented is whether this particular finding can be sustained.

The contract of purchase is dated August 3, 1921. The purchase price was $34,500, of which $10,000 was paid in money and prop-

erty when the contract was made. The balance was payable in monthly instalments of $175. The plaintiff Ray A. Briggs operated the theater from August 13, 1921, until February 20, 1922, and made five payments between those dates, the last on January 14, 1922. He ceased to operate the theater because the attendance fell far short of what defendant is alleged to have represented it to be.

The jury's findings established the making of the representation and its falsity. At a supplemental hearing evidence was introduced which, in conjunction with the evidence laid before the jury, tended to show the following state of facts:

Disappointed by the attendance in August, plaintiff inquired of defendant why it was so light. He was assured that it was always so until the University students came back in the fall. He made a similar inquiry in September and received the same answer. In October the inquiry was repeated and the answer was that the students did not patronize theaters to any extent until they had been back about six weeks. In November defendant's answer to like inquiries was that the attendance at the University had fallen off and that this explained the lack of patronage of the theater. At this time plaintiff began to suspect that he had been defrauded and made some outside inquiries about the previous attendance, but got no definite information until the last week in January, 1922, when he was allowed to examine the record of the "ticket tax" paid to the United States by the former proprietor of the theater and discovered that the attendance had been much less than defendant had represented it to be.

The court found that "prior to December 1, 1921, and at all times thereafter, plaintiff * * * had notice and knowledge of facts from which he might and ought, in the exercise of reasonable diligence, to have obtained all the information respecting the truth or falsity of defendant's representations as aforesaid which he possessed at the time of the commencement of this action; that no notice of the desire of plaintiff to rescind said agreement was given to defendant prior to the commencement of this action;" and that plaintiff had not ratified the contract after an actual and complete discovery of the fraud.

The evidence shows that the fraud was actually discovered on or about January 31, 1922; that thereupon plaintiff engaged counsel to bring suit; and that the interval between February 1 and 21 was occupied in gathering evidence and preparing the case for presentation to the court; so the ultimate question is this: Was the failure to commence the action before February 21, 1922, such laches as justified the court in closing its doors upon plaintiffs when they came seeking relief in equity?

The trial judge thought that laches was established because the average daily attendance was only 120, whereas defendant had represented that the house, which seated 468 persons, was always filled to capacity at least once a day. To the mind of the court so great a difference could not be satisfactorily explained and would necessarily and quickly lead any intelligent man to the conclusion that he was the victim of deception. In a memorandum accompanying the findings the court said that plaintiff should have made inquiry of employes who, for a time after the purchase, remained in plaintiff's service, and of the patrons of the theater, and that he should have examined the records in the office of the collector of internal revenue. Plaintiff did make some inquiry of one of the former employes, but such information as he got was indefinite. The former proprietor of the theater seems to have joined in the misrepresentations, and it may be inferred that his employes were not disposed to inform plaintiff that he had been duped.

There is no evidence that the theater had any regular patronage, but plaintiff did inquire about the attendance among neighboring tradesmen and obtained no information.

It does not appear that in the year 1921 the records in the office of the revenue collector were open to public inspection. The evidence is to the effect that when plaintiff first sought leave to examine them, he was told that "it was against the rules to show the records." Plaintiff is not to be blamed because it did not occur to him, prior to January, 1922, that he might obtain reliable information in that quarter.

The law applicable to the facts may be found in our own reports. The pith of the doctrine of laches is unreasonable delay in enforcing

a known right. State v. Brooks-S. Lbr. Co. 122 Minn. 400, 142 N. W. 717. In a general sense it is such negligence in asserting a right as will bar one from obtaining equitable relief. Whether the delay was culpable or not depends on many circumstances, among which are actual or imputable knowledge of the facts, and resulting prejudice from the delay either to the defendant or to those who have equities to be protected. Bausman v. Kelley, 38 Minn. 197, 36 N. W. 333, 8 Am. St. 661; Lloyd v. Simons, 97 Minn. 315, 105 N. W. 902; 10 R. C. L. p. 405.

In McQueen v. Burhans, 77 Minn. 382, 80 N. W. 201, it was remarked that the fact that defendant's position had not changed to his detriment did not necessarily defeat the defense of laches; but in Haataja v. Saarenpaa, 118 Minn. 255, 136 N. W. 871, we find this language: "Delay must be culpable in order to become laches, and prejudice must result." The latter statement appeals to reason, for, so long as the parties are in the same condition as they were before the delay occurred, it matters little whether the plaintiff presses his right promptly or slowly within the period allowed by law. Not until the situation has changed so that the defendant cannot be restored to his former state, if the right should be enforced, does the delay become inequitable or operate as an estoppel against the assertion of the right.

Numerous cases approve of this doctrine, among them Galliher v. Cadwell, 145 U. S. 368, 12 Sup. Ct. 873, 36 L. ed. 738, and Penn. Mutual Life Ins. Co. v. Austin, 168 U. S. 685, 18 Sup. Ct. 223, 42 L. ed. 626.

As to the necessity of knowledge of the facts which are the basis of equitable relief for fraud, there seems to be little, if any, difference in the opinions of the courts. The time within which to sue begins to run, not from the perpetration of the fraud, but from the discovery thereof. Ignorance of the facts due to negligence does not excuse laches, for the defrauded party must be diligent and make such inquiry and investigation as the known facts and circumstances reasonably suggest or permit. A greater degree of diligence is required where the facts are a matter of public record

and an inspection of the record is suggested by ordinary prudence. 21 C. J. p. 244, 247, 249.

The evidence leads us to the conclusion that the defense of laches was not established in the instant case. There was no delay after discovery of the falsity of defendant's representations. He suffered no prejudice or disadvantage from the failure to bring suit prior to February 21, 1922. No change in the conditions took place after December 1, 1921. Plaintiff moved promptly enough as soon as he had sufficient evidence of the fraud. The contract was not ratified or the fraud waived after the discovery thereof. The rights of third persons have not intervened. There is no evidence of a depreciation in the value of the property. In a measure defendant is responsible for a portion of the delay. Plaintiff seems to have been reluctant to believe that defendant had taken advantage of his credulity. A man, too ready to trust others, should not be denied equitable relief merely because he refuses to believe he has been deceived until some months after men of greater sagacity would have discovered the deception.

Seemingly the court was satisfied that the findings of the jury were sustained by the evidence. Whether defendant should be heard on a motion for a new trial, as requested in the brief in his behalf, or whether judgment should be entered in plaintiffs' favor on the findings after eliminating the finding of laches, as requested in the brief for plaintiffs, are questions which we leave to the determination of the trial court.

The judgment is reversed and the case remanded for further proceedings in accordance herewith.

Holt and Stone, JJ., took no part.