CLARENCE ELSEN v. STATE FARMERS MUTUAL INSURANCE COMPANY AND ANOTHER.[1]

February 16, 1945.

No. 33,806.

[1]Reported in 17 N. W. (2d) 652.

See, 217 Minn. 564, 14 N. W. (2d) 859.

*F. H. Durham, A. M. Lystad,* and *Moonan & Moonan,* for appellants.

*Gillette & Meagher* and *B. B. Markham,* for respondent.

LORING, CHIEF JUSTICE.

This is an appeal from an order vacating a dismissal with prejudice and a prior approval of a settlement for a minor's personal injury action on the ground of mutual mistake. The order also placed the case on the calendar for trial. It was held to be an appealable order in Elsen v. State Farmers Mut. Ins. Co. 217 Minn. 564, 14 N. W. (2d) 859.

July 2, 1934, plaintiff, then nine years of age, was struck by an automobile owned by defendant State Farmers Mutual Insurance Company and driven by the defendant B. E. Benson. Both legs were injured above the knee. Plaintiff was hospitalized for a period of six months, at the end of which his physician made the following statement in writing:

"This is to certify that I treated Clarence Elsen on July 2nd for the following injuries: Fractures both legs above the knees, mul-

tiple cuts and bruises about the face, multiple bruises over the chest and right shoulder, and a cut on the right thumb. On examination December 21st I find that he has made ⁣complete recovery. There apparently is not the slightest disability of the legs. The fractures have healed perfectly. He can run and jump and play as any other boy his age."

The father made a settlement in behalf of the boy, to effectuate which a suit was brought against the company. There was filed with the complaint a petition reciting that the parties had agreed upon a settlement for the damages suffered by the minor and asking the approval of the court. Since plaintiff had no counsel, the attorney for defendants prepared all papers. December 31, 1934, the court by order approved the settlement and authorized petitioner to sign a proper release in behalf of the minor and to dismiss the action. On the same day the action was dismissed with prejudice.

Subsequently, the boy experienced great pain in his legs. He had an operation on his left leg in July 1936 and another one on the same leg in 1941. In 1942, he had an operation on his right leg. He wore a brace for about three months after each operation. There is evidence tending to show that the growth of the legs was affected as a result of the accident.

November 24, 1943, the father petitioned the court in behalf of his son for an order vacating the judgment of dismissal and the approval of the settlement made in 1934 on the ground of mutual mistake as to the nature of the minor's injuries. This was granted on the basis of "mutual mistake in the making of the said order and the execution of the said dismissal."

Defendants contend that the application was barred by Minn. St. 1941, § 544.32 (Mason St. 1927, § 9283). They challenge the vacation of the order of approval on the ground of mutual mistake and set up laches, estoppel, and ratification.

■ Defendants contend that the application to vacate the judgment came too late because not made within one year from the

entry of judgment. They invoke § 544.32, which provides that the court at any time within one year after notice thereof, in its discretion—

"may relieve a party from any judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect; or may, for good cause shown, modify or set aside its judgments, orders, or proceedings, whether made in or out of term and may supply any omission in any proceeding, or in the record, or by amendment conform any proceeding to the statute under which it was taken."

That part of the quoted section which precedes the semicolon was in the statute prior to the enactment of L. 1876, c. 49, and referred only to the excusable delinquencies of the moving party. The vacation of the judgment here under consideration does not fall within that provision, because the action of the court was based upon *mutual* as distinguished from *unilateral* mistake. The quoted provision following the semicolon was obviously incorporated into the section by L. 1876, c. 49, solely for the purpose of lifting the rather stringent common-law rule, as laid down in Grant v. Schmidt, 22 Minn. 1 (May 17, 1875), limiting the control of the court upon its orders or judgments to the term at which such orders or judgments were entered. Beckett v. N. W. Masonic Aid Assn. 67 Minn. 298, 69 N. W. 923. It was enacted to liberalize, not to restrict, the court's powers. The sole objects of its provisions were the orders and judgments of which control was lost under the common-law rule with the expiration of the term. If the judgment and stipulation in the case at bar does not fall within the class of judgments subject to the common-law rule, we are of the opinion that it does not fall within the scope of the second provision of the statute above referred to. Under the common-law rule, which applied strictly to judgments in controversial cases, there was a clear distinction between judgments recovered in contested proceedings and those entered by consent without contest.

In Hodgson v. Vroom (2 Cir.) (1920), 266 F. 267, 268, 269, where the court clearly pointed out this distinction, it said:

"* * * The distinction between a decree in common form and a consent decree is the difference between a consent to submit a case to the court for decision and a consent as to what the decision shall be. When there is a consent as to what the decision shall be, the decree.is a 'mere agreement of the parties under the sanction of the court, and is to be interpreted as an agreement.'"

See, also, Wilson v. Haber Bros. Inc. (2 Cir.) (1921), 275 F. 346.

In the case at bar, plaintiff was not represented by counsel, and counsel for defendants took charge of the proceedings and drafted the pleadings, stipulation, and order of approval of the court.

Within the definition in the Hodgson case, the judgment of dismissal herein was a "consent" judgment, because the stipulation of the parties agreed upon what the judgment should be, and it became effective upon sanction of the settlement by the trial court. Notwithstanding that approval, it was still a judgment by consent, because it was the result of an agreement as to what the decision should be, and it was in the same class as judgments by confession, which remain indefinitely within the court's control, apparently, because the causes were uncontested. In re Koehler, 102 N. J. Eq. 133, 140 A. 15. In re Estate of Simon, 187 Minn. 399, 246 N. W. 31, is not in point. Therefore, the judgment in the case at bar fell without the provisions of § 544.32, and a motion to vacate it is not limited by the time therein stated.

■ From the affidavits of the doctors it conclusively appears that the injury plaintiff received was an epiphyseal[2] separation of the lower ends of the femurs. This type of injury is not a bone fracture in the true sense, but a separation of the fibrous and cartilaginous tissues which attach the epiphysis to the femur. Such a separation may interfere with the development and growth of the

[2]Epiphysis—a part or process of a bone which ossifies separately and subsequently becomes ankylosed (to grow together into one) to the main part of the bone. Webster's New International Dictionary (2 ed.) 1934.

bone of the femur. In this case, there is evidence tending to prove that the normal development of plaintiff's legs was affected, necessitating three operations.

Judge Guilford, who had approved the settlement in 1934, was confronted in November 1943 with the application to vacate and found that the injury was such that "it should [be] classified as a different type of injury than a simple fracture, and consequently was not a known injury." He stated that he might not have approved the settlement had he known that it was epiphyseal separation instead of an ordinary fracture. The affidavits of the medical authorities stated that growth disturbances result from about 15 percent of the injuries of the nature suffered by plaintiff. He and his father assert that they were not informed of the epiphyseal separation and were not aware of it at the time of the settlement but thought the injuries were ordinary fractures. The father swore that if he had been informed of the nature of the injuries he would not have settled. Defendants were also unaware of the epiphyseal separation. Such being the case, the court was justified in viewing the injuries actually received as distinct and different from those which all parties considered that plaintiff had sustained. The evidence supported a finding of mutual mistake, a mistake which was shared by the court. Wilson v. Davidson, 219 Minn. 42, 17 N. W. (2d) 31; Picciano v. D. M. & N. Ry. Co. 102 Minn. 21, 112 N. W. 885. As this court said in the Wilson case (219 Minn. 49, 17 N. W. [2d] 35):

"* * * If a showing is made indicating that an injustice will be done the minor if the approval is allowed to stand because of separate and distinct injuries sustained by him not contemplated by the parties or considered in the settlement, the court has the authority to exercise its discretion in vacating the order."

Since plaintiff was not represented by counsel and the attorney for defendants drew all papers and conducted the proceedings, the case appeals strongly to the conscience of the court. Consequently, it was not an abuse of judicial discretion to conclude that the order

approving the settlement should be vacated. There was good cause for equitable relief.

■ Defendants contend that plaintiff was guilty of laches in seeking to set aside the order of approval. Nine years elapsed between the dismissal with prejudice and the petition to have the settlement set aside; but the full measure of the injuries did not develop until 1942, when the last of the three operations was performed. In April 1942, Clarence's father had a law firm address a communication to defendant company requesting further consideration of the liability. It was refused, and in 1943 this application to set aside the court's approval of the settlement was made.

On this record, whether plaintiff was guilty of laches in moving to have the judgment and order of approval vacated was a question to be determined in the discretion of the trial court, dependent upon the particular facts in the case.

"* * * The practical question in each case is whether there has been such an unreasonable delay in asserting a known right, resulting in prejudice to others, as would make it inequitable to grant the relief prayed for."

Lloyd v. Simons, 97 Minn. 315, 317, 105 N. W. 902, 903; Hanson v. Sommers, 105 Minn. 434, 117 N. W. 842; Crocker v. Bergh, 118 Minn. 316, 136 N. W. 737; Berryhill v. Peabody, 77 Minn. 59, 63, 79 N. W. 651, 652; Kent v. Costin, 130 Minn. 450, 153 N. W. 874; State, by Peterson, v. Bentley, 216 Minn. 146, 12 N. W. (2d) 347. In exercising its discretion, lapse of time is only one of the elements to be considered. State, by Peterson, v. Bentley, *supra.* "Mere delay does not constitute laches, unless the circumstances were such as to make the delay blamable." Lloyd v. Simons, 97 Minn. 317, 105 N. W. 903, *supra.* The main question to be determined is whether defendants will be prejudiced. State, by Peterson, v. Bentley, *supra.*

The whereabouts of two witnesses for defendants is unknown, but the trial court's memorandum shows that plaintiff has filed a commitment to admit that if called they would testify to the

facts stated by them to defendants. The court in the exercise of its discretion considered these questions and found no prejudice to defendants, and we see no abuse of its discretion. What we have said here also disposes of the question of estoppel.

■ ■ The claim of ratification is disposed of by Marple v. M. & St. L. Ry. Co. 115 Minn. 262, 132 N. W. 333, Ann. Cas. 1912D, 1082, and Althoff v. Torrison, 140 Minn. 8, 167 N. W. 119.

Order affirmed.