Raymond L. JONES, Jr., Appellant,

v.

BOYD TRANSFER & STORAGE CO., Appellee.

No. 17320.

United States Court of Appeals Eighth Circuit.

Oct. 30, 1963.

Gary B. Crawford, Minneapolis, Minn., William B. McCallum, of Wheeler, Fred-rikson & Larson, Minneapolis, Minn., on the brief, for appellant.

Donald M. Jardine, of Tyrrell, Jardine, Logan & O'Brien, St. Paul, Minn., for appellee.

Before VOGEL and MATTHES, Circuit Judges, and ROBINSON, District Judge.

VOGEL, Circuit Judge.

Raymond L. Jones, Jr., commenced this action in November 1961 against the Boyd Transfer and Storage Company for damages in the amount of $20,000 by reason of Boyd's refusal to transfer 130 shares of its stock to Jones. Diversity of citizenship and amount involved comply with federal court jurisdictional requirements. The parties will be referred to herein as they were in the court below.

The case was submitted to a jury on a special verdict pursuant to Rule 49, Federal Rules of Civil Procedure, 28 U.S.C.A. The question presented to the jury for its answer was whether or not Dudley D. Allerton made a gift of the 130 shares of Boyd stock to the plaintiff in October of 1947. The jury answered the special interrogatory in the affirmative, thus holding for the plaintiff. Following the return of the verdict, the District Court, pursuant to the defendant's motion, granted judgment notwithstanding the verdict. Whereupon plaintiff brought this appeal.

A fairly detailed statement of the evidence would seem to be indicated. In 1920 the Boyd Transfer and Storage Company issued 130 shares of its Second Preferred Stock, represented by four stock certificates, to "Dudley D. Allerton or Alice C. Allerton" as owners thereof. Each stock certificate carried on its face the statement, "transferable only on the Books of the Corporation in person or by Attorney on surrender of this Certificate". On the reverse side of the certificates appeared the following reservation:

"6. The Company reserves the right to retire the stock, at a price of One-hundred and five Dollars ($105.-00) per share, on the first business

day of January, April, July or October of any year after five years from date of issue, as shown on the face hereof, upon the giving of sixty (60) days notice to the stockholder."

Dudley D. Allerton and Alice C. Allerton, his wife, lived in Bath, New York. Alice C. Allerton became deceased. Any interest she may have had in the stock certificates may be disregarded insofar as this controversy is concerned.

On July 14, 1941, Allerton entered into an irrevocable trust agreement whereby he transferred and assigned to his nephew, John Parker, as trustee, all of his property, both real and personal, the trustee to hold the estate for the purpose of paying to Allerton $75 per month therefrom as long as he should live and therafter the property remaining to be distributed to certain named heirs. The schedule of property owned by Allerton and assigned in the trust agreement specifically included the four stock certificates representing 130 shares of stock in Boyd Transfer and Storage Company. There is in the record a receipt, also dated July 14, 1941, signed by John L. Brownley, who was Mr. Allerton's attorney, acknowledging receipt of the stock certificates herein involved. The certificates, together with other assets which were to constitute the corpus of the trust, were received by Brownley "for delivery to John Parker".

In December 1943 Allerton wrote to his trustee, John Parker, asking him to send the Boyd stock certificates to him for examination, apparently to determine whether or not his wife, then deceased, had had some interest therein. The stock was never returned to the trustee and became the subject of an unsuccessful search thereafter.

Beginning in January 1947 John L. Brownley, as attorney for Mr. Allerton, wrote Boyd Transfer with reference to the 130 shares of stock, particularly as to an offer by Boyd to purchase the stock. In his letter he referred to the fact that Mr. Allerton had "apparently mislaid the certificates".

In June 1947 Mr. Allerton, who was then 90 years of age, was assisted by a niece in moving from the house in which he had resided alone for some time to a rest home in Bath. At that time a search was made of the premises by Allerton's niece to try to locate the lost stock certificates, but to no avail. The Allerton house was sold to a Judge Smith who, in August 1947, sold it to the plaintiff, Raymond L. Jones, Jr., Jones taking possession around August 23, 1947. Jones was informed by Judge Smith that the former owner, Allerton, who resided in a nearby rest home, had planted a garden at his former premises and desired to continue taking care of the garden, to which Jones agreed. Jones and his wife first met Allerton about August 28, 1947. Prior thereto they had been strangers. Allerton came to attend his garden three or four times a week, got to know the plaintiff and his wife and occasionally stayed with them for lunch and at times gave them vegetables from the garden he tended. Some four to six weeks after Mr. and Mrs. Jones had moved into the house and had met Mr. Allerton, in other words the early part of October 1947, Mr. Allerton, according to the testimony of Mr. and Mrs. Jones, gave the stock certificates in question here to Mr. Jones. The certificates were endorsed in blank "Dudley D. Allerton", neither the name of the assignee nor the date being filled in. The signature was not witnessed. Jones assumed that the certificates were worthless. He placed them with his insurance policies and discharge papers and had no further conversations with Mr. Allerton with reference to them, although Mr. Allerton came there frequently thereafter.

On October 21, 1947, the same month Mr. Allerton was supposed to have given the stock to the plaintiff, John Parker, Allerton's trustee, wrote to Boyd Transfer, advising that the stock had been lost and apparently destroyed with other papers and asked for information necessary to the making of an application for a lost securities bond. On November 6, 1947, about a month after the certificates were

allegedly given to the plaintiff, Mr. Allerton wrote to the Boyd Transfer and Storage Company, advising that the stock had been lost or destroyed and stating in his letter, "I did not sell or give away this stock." Ultimately in December 1947, pursuant to the representations by Allerton, the record owner of the stock, that the certificates had been lost and the filing of an indemnity bond, replacement certificates were issued which were shortly thereafter redeemed by the Boyd Transfer. The turning in of the replacement certificates to Boyd by John Parker, the trustee, was ratified and confirmed by Mr. Allerton on November 28, 1947. Payment was made to Allerton and John Parker, trustee. Allerton died on August 30, 1949, being then past 92 years of age.

Sometime in the early 1950's, the plaintiff took the four stock certificates in question to the Bath National Bank, Bath, New York, of which bank Mr. Allerton had been a customer, and asked the president of the bank to guarantee Allerton's signature. The certificates were thereupon endorsed, "Signature guaranteed by Bath National Bank, Bath, New York", underneath which was the signature of A. J. Hamilton, President.

No attempt was made to notify Boyd Transfer or to have the stock transferred from Mr. Allerton's name to that of the plaintiff.

In February 1958 the plaintiff took the four stock certificates to his attorney, Grover C. Bradstreet of Bath, New York, who, upon inquiry, discovered that the certificates did have value. In February 1958 plaintiff's attorney contacted the defendant corporation by letter, demanding that it recognize the plaintiff's rights in the stock. Such demand was refused and Bradstreet was informed by letter of March 3, 1958, that on the basis of a Lost Certificate Affidavit made by John Parker acting as trustee for Dudley D. Allerton, a new stock certificate had been issued to Allerton with John Parker as trustee and that the new certificate had been redeemed. This action was not commenced until November 1961. At that time Mr. Allerton, Brownley, his attorney; John Parker, his trustee; and Hamilton, the banker who certified to Allerton's signature, were all deceased. The case was tried to a jury with a single special interrogtatory being submitted:

"Did Mr. Dudley Allerton make a gift of 130 shares of the Second Preferred Stock of the Boyd Transfer and Storage Company to Raymond L. Jones, Jr., in the Autumn of 1947?

"Answer (Yes or No) Yes.

                    /s/ David J. Hubbard
                              Foreman

"Dated: October 15th, 1962."

Subsequent to the return of the special interrogatory, the defendant made a motion for judgment notwithstanding the verdict and also for an order "amending and/or changing" the jury's answer to the special interrogatory. The grounds on which the learned District Judge granted the motion for judgment notwithstanding the verdict may be summarized as follows: (a) plaintiff's action is barred by the statute of limitations, M.S.A. § 541.05; (b) plaintiff was estopped from asserting his cause of action because of laches; (c) title to the stock was in the trustee, John Parker, and not in Allerton at the time of the alleged gift; (d) plaintiff's suit was not properly brought against Boyd Transfer; (e) there was no substantial evidence to support the finding of a gift.

If the trial court was correct in any one or more of the reasons given for the granting of the motion, this case must be affirmed.

We consider first the trial court's determination that plaintiff's cause of action was barred by the statute of limitations. Minnesota Statutes Annotated § 541.05 provides, insofar as it may be applicable here, as follows:

"541.05 Various cases, six years

"The following actions shall be commenced within six years:

"(1) Upon a contract or other obligation, express or implied, as to which no other limitation is expressly prescribed;

*    *    *    *    *    *

(4) For taking, detaining, or injuring personal property, including actions for the specific recovery thereof;

&ast; &ast; &ast; &ast; &ast; &ast;

"(6) For relief on the ground of fraud, in which case the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud;

"(7) To enforce a trust or compel a trustee to account, where he has neglected to discharge the trust, or claims to have fully performed it, or has repudiated the trust relation."

■ This was, in effect, an action for conversion of 130 shares of the Second Preferred Stock of Boyd Transfer which plaintiff claims were given to him by Dudley D. Allerton in October of 1947. No charge or claim of fraud is involved whatsoever.

Plaintiff had notice from the beginning that the stock was "transferable only on the Books of the Corporation in person or by Attorney on surrender of this Certificate" and that it was subject to redemption by the defendant corporation. The stock was actually redeemed by the defendant corporation on December 31, 1947. Certainly at that time, if not at the time he received the stock, plaintiff had a cause of action against the defendant and the statute of limitations began running.

In Sollar v. Oliver Iron Mining Co., 1952, 237 Minn. 170, 54 N.W.2d 114, the Minnesota Supreme Court, in construing the statute of limitations with which we are here concerned, stated at page 117 of 54 N.W.2d:

"Paragraph 4 of the reply in effect pleaded that operation of the statute of limitations was tolled until plaintiff's discovery of the alleged mistake in the Dyer appraisal. The trial court held such allegations insufficient to prevent the tolling of the statute. We believe it was correct in this determination. Plaintiff's action is based upon the mutual mistake of the parties rather than fraud. *The statute of limitations, M.S.A. § 541.05, is not tolled by the failure of a party to discover an alleged mistake upon which a contract action is based.* It is true that *in cases of fraudulent concealment, by virtue of § 541.05(6), the limitation statute is tolled until discovery of the fraud, but this exception does not extend to cases based upon mistake only.*" (Emphasis supplied.)

In the instant case, if Boyd did make a mistake with reference to the ownership of the stock in question when it redeemed the stock on December 31, 1947, plaintiff's cause of action arose and the statute certainly began running at that time.

The case cited and relied on by the District Court on this point is Falkenhagen v. Montevideo Building & Loan Ass'n, 1938, 202 Minn. 278, 278 N.W. 32. In that case certain stock had been taken out by the father in plaintiff's name at the time plaintiff was three years old. Some nine years thereafter the corporation declared that all shares of that series should mature and be payable. There is an inference that the stock certificate had been mislaid and payment for the stock was made to plaintiff's father. In sustaining the lower court's application of the statute of limitations, the Supreme Court of Minnesota stated, at page 33 of 278 N.W.:

"&ast; &ast; &ast; the record is clear that plaintiff had full knowledge of the facts respecting his claim to the stock represented by this certificate in 1912, when he became of age, yet he never demanded of defendant either dividends or interest thereon, or made any claim or demands on defendant as owner of these shares, until three years after his father's death. We think the statute of limitations barred plaintiff's cause of action."

The only ones who knew of plaintiff's interest or claim in the Boyd stock, beginning as of 1947, were Jones himself and his wife. The defendant had no notice or indication thereof. In 1952 or

1953 Jones took the certificates to the Bath National Bank where the president thereof certified Allerton's signature. Jones still did nothing until February 1958, at which time he made inquiry as to the value of the stock through his attorney, Bradstreet. After learning of the value, he notified the defendant but still delayed any action until November 1961. We believe that the District Judge reached a permissible conclusion as to Minnesota law in holding the statute of limitations a bar to plaintiff's action.

■ In holding that Jones was guilty of laches in failing to pursue his rights against Boyd, the trial court denominated Jones' claim as "musty from age", citing Meyers v. Barrett & Zimmerman, Inc., 1936, 196 Minn. 276, 264 N.W. 769, 772. The Supreme Court of Minnesota, in referring to the doctrine of laches, said in State ex rel. Peterson v. Bentley, 1943, 216 Minn. 146, 12 N.W.2d 347, 355:

"* * * 'Laches in a general sense is such negligence in bringing an action or otherwise asserting one's right as will preclude him from obtaining equitable relief.' Lloyd v. Simons, 97 Minn. 315, 317, 105 N.W. 902. The doctrine of laches depends entirely upon the peculiar circumstances surrounding each case, upon the nature of the claim, and whether the delay has been unnecessary and unreasonable. St. Paul M. & M. Ry. Co. v. Eckel, 82 Minn. 278, 84 N.W. 1008. Lapse of time is only one of the considerations involved in the defense of laches. A party is held barred where the delay is so long and the circumstances of such character as to establish a relinquishment or abandonment of the right. Ricker v. J. L. Owens Co., 149 Minn. 130, 182 N.W. 960. The main question to be determined is whether the defendant will be prejudiced—whether he will be placed in a position to suffer injury—if the remedy sought is granted. In general, laches depends on whether the delay has been such as to make it inequitable to grant the desired relief. Peterson v. Schober, 192 Minn. 315, 256 N.W. 308."

In Briggs v. Buzzell, 1925, 164 Minn. 116, 204 N.W. 548, 549, the Minnesota Supreme Court said:

"* * * The pith of the doctrine of laches is unreasonable delay in enforcing a known right. State v. Brooks, etc., Co., 122 Minn. 400, 142 N.W. 717. In a general sense, it is such negligence in asserting a right as will bar one from obtaining equitable relief. Whether the delay was culpable or not depends on many circumstances, among which are actual or imputable knowledge of the facts, and resulting prejudice from the delay, either to the defendant, or to those who have equities to be protected. Bausman v. Kelley, 38 Minn. 197, 36 N.W. 333, 8 Am.St. Rep. 661; Lloyd v. Simons, 97 Minn. 315, 105 N.W. 902; 10 R.C.L. p. 405."

And in State ex rel. Sawyer v. Mangni, 1950, 231 Minn. 457, 43 N.W.2d 775, 781, the Minnesota Supreme Court commented that:

"* * * The doctrine of laches is designed to promote vigilance and to discourage delay in enforcing rights. It operates to cut off stale claims of those who have procrastinated unreasonably and without excuse. Brandes v. Carpenter, 68 Minn. 388, 71 N.W. 402; Lloyd v. Simons, 97 Minn. 315, 105 N.W. 902; Sinell v. Town of Sharon, 206 Minn. 437, 289 N.W. 44; Elsen v. State Farmers Mut. Ins. Co., 219 Minn. 315, 17 N.W.2d 652."

Here the plaintiff, Jones, knew of his rights at the time he received the stock in October 1947. He knew that the stock was transferable only upon the books of the corporation. He knew also of Boyd's right to retire the stock on the first business day of January, April, July or October of any year after five years from the date of issue (1920). He knew, or should have known, that under Minnesota Statutes Annotated §§ 300.25 and 300.26

the corporation had the right to treat the record owner of the stock as the owner in fact until a transfer had been recorded on its books. In 1952 or 1953, for reasons known only to him, he had Mr. Allerton's signature on the stock certified as authentic. In 1958 he learned that the stock had a definite value. He waited almost fourteen years before asserting his rights to the stock in question by commencing this suit. In the meantime, the defendant, upon the basis of a Lost Certificate Affidavit and Application, issued new certificates and shortly thereafter, as was its right, retired the stock and paid some $14,300 to the owner of record and his trustee. Most of the persons who could have testified as to the transactions in question became deceased. Under these circumstances, it can hardly be said that the defendant was not prejudiced by plaintiff's laxity in attempting to enforce his rights. We think the trial court very properly exercised its discretion in so holding. That the determination of whether the doctrine of laches should be applied is within the discretion of the trier of the facts is clearly established by Elsen v. State Farmers Mut. Ins. Co., 1945, 219 Minn. 315, 17 N.W.2d 652. Therein the Minnesota court said at page 656 of 17 N.W.2d:

"* * * whether plaintiff was guilty of laches * * * was a question to be determined in the discretion of the trial court, dependent upon the particular facts in the case."

And see Corah v. Corah, 1956, 246 Minn. 350, 75 N.W.2d 465, 469.

For obvious reasons, we find it unnecessary to discuss the other points referred to in the trial court's Memorandum granting the motion for judgment notwithstanding the verdict.

This case is affirmed.