RAYMOND F. HENTSCHEL v. FLORINE M. SMITH.
FLORINE M. SMITH v. CITY OF ST. PAUL AND ANOTHER.
EDMUND B. LEARY, THIRD-PARTY DEFENDANT.

153 N. W. (2d) 199.

September 15, 1967—No. 40,496.

---

[6] See, Roberts v. Motor Cargo, Inc. 258 Minn. 425, 104 N. W. (2d) 546; Lund v. Biesanz Stone Co. 183 Minn. 247, 236 N. W. 215.

88

*Joseph P. Summers,* Corporation Counsel, and *Thomas J. Stearns,* Assistant Corporation Counsel, for appellant.

*Robert W. Murnane,* for respondent Smith.

*Arthur J. Donnelly,* for respondent Leary.

NELSON, JUSTICE.

Appeal from an order of the District Court of Ramsey County granting a motion for summary judgment.

On December 25, 1962, a fire department truck owned by the city of St. Paul and driven by Raymond F. Hentschel, an employee of the city and a member of its fire department, collided with a Dodge sedan automobile owned by Florine M. Smith and driven by Rt. Rev. Edmund B. Leary. Mrs. Smith was a passenger in her automobile at the time of the accident and in April 1964 brought suit alleging negligence against the city of St. Paul and Hentschel.

The city answered, denying negligence on the part of Hentschel, alleging contributory negligence and assumption of risk on the part of plaintiff, and asserting the defense of governmental immunity. It counter-

claimed for damages to its vehicle and recovery of workmen's compensation benefits paid to employees, including Hentschel, who were injured in the collision. The city also instituted a third-party action against Rev. Leary, alleging that his negligence caused the accident, seeking indemnity for any amount it might be liable to pay plaintiff, and seeking recovery of damages to its truck and of workmen's compensation payments made to the injured employees.

Hentschel, the driver of the truck, had brought an action against Mrs. Smith in March 1963 seeking recovery of wages, medical expenses, and general damages. The actions were consolidated for trial. However, on December 16, 1965, Mrs. Smith and defendant city entered into a stipulation for settlement of her action against the city. That settlement agreement contained the following provisions:

"WHEREAS, a settlement has been agreed upon by and between the plaintiff Florine M. Smith and the defendant and third-party plaintiff City of Saint Paul, in and by which the plaintiff Florine M. Smith has agreed to accept from said City the sum of Eleven Thousand One Hundred Fifty-six and 95/100 Dollars ($11,156.95) in full payment and discharge of all matters at issue between said Florine M. Smith and said City for certain personal injuries and damages arising from her cause of action above entitled;

"WHEREAS, it is further agreed upon by and between said parties that defendant City of Saint Paul will discharge and dismiss with prejudice its counterclaim against plaintiff Florine M. Smith upon the understanding that such dismissal and discharge is not to be construed as an intent to act as a dismissal, release or discharge of the cause of action defendant City of Saint Paul has or may have in its third-party action against Edmund B. Leary for damages in the sum of $1,478.09, representing damages to its vehicle, and damages in the amount of workmen's compensation benefits paid to its employees, William Greifzu, Irvin Rousseau, Robert J. Heinen, and Raymond Hentschel; and

"WHEREAS, it is further agreed upon by and between said parties that, as a condition of said settlement, defendant and third-party plaintiff shall amend its third-party complaint against Edmund B. Leary, third-

party defendant, to exclude any claim for sums that defendant and third-party plaintiff may be liable to plaintiff, Florine M. Smith, which includes the amount of the settlement herein;

"THEREFORE, pursuant to the terms of such settlement, it is stipulated between the parties that judgment be entered in favor of the plaintiff Florine M. Smith and against defendant and third-party plaintiff City of Saint Paul in the sum of Eleven Thousand One Hundred Fifty-six and 95/100 Dollars ($11,156.95) without costs or disbursements to either party."

Judgment pursuant to this stipulation was entered December 23, 1965.

The actions were called for trial in January 1966. At that time counsel for Mrs. Smith moved for summary judgment in her behalf in the action brought against her by Hentschel on grounds of res judicata and estoppel by judgment. This motion was denied. Counsel for Rev. Leary moved for summary judgment in his favor in the third-party action brought against him by the city on the same grounds. This motion was granted, and the city appeals from the judgment entered pursuant to that order, contending that the judgment was not proper within the rules of res judicata or those pertinent to consent judgments.

Third-party defendant Leary cites Pangalos v. Halpern, 247 Minn. 80, 76 N. W. (2d) 702, as an aid in ascertaining the extent to which defendant city is bound by the consent judgment entered pursuant to the stipulation. We have, however, an entirely different set of facts in the Pangalos case. There, the administratrix of an estate entered into an agreement with the attorneys who handled the estate establishing the amount of their fees. This agreement was submitted to the probate court and the court entered an order approving it. Three years later the administratrix moved the district court to have the order set aside. The motion was denied. The administratrix then brought an action against the attorneys for money had and received. The trial court granted a directed verdict in their favor on the ground that the order of the probate court was res judicata. This court affirmed, correctly stating the rule as follows (247 Minn. 85, 76 N. W. [2d] 706):

"Since the order herein determining the reasonable value of the attorneys' fees and directing their payment in the course of administration was in essence a final judgment binding and conclusive upon the parties, and res judicata as to the point adjudicated, it falls under the following general rule: In the absence of fraud, a valid judgment, decree, or as here an order which is the equivalent thereof, entered by agreement or consent, operates as res judicata to the same extent as if it had been rendered after contest and full hearing and is binding and conclusive upon the parties and those in privity with them."

While this court cited in support of the foregoing statement Annotation, 2 A. L. R. (2d) 514, 521 to 529, it did not specifically refer to the following exceptions set forth therein (p. 520), namely:

"1.   A judgment entered by agreement or consent should not be given a conclusive effect where to do so would violate an important public policy.

"2.   The extent to which a judgment or decree entered by consent is conclusive in a subsequent action should be governed by the intention of the parties as expressed in the agreement which is the basis of the judgment and gathered from all the circumstances, rather than by a mechanical application of the general rules governing the scope of estoppel by judgment. It is obvious that a party may consent to a judgment for the purpose of securing freedom from litigation and, nevertheless, may not be willing to bind himself for other, perhaps more important, issues which may arise subsequently.

"3.   Generally speaking, a judgment or decree entered by agreement or consent should be conclusive only upon the parties, or privies of parties, to the agreement and judgment; and should not be binding upon other persons, even though such other persons would be bound by the judgment or decree, had it been entered after contest. This is particularly applicable to judgments in rem and judgments entered in class suits." [1]

---

[1] As to the rule denying a consent judgment effect as res judicata, the following comments appear in the annotation (2 A. L. R. [2d] 538): "In some cases flat statements have been made to the effect that a judgment

We think that application of the rule of Pangalos v. Halpern, *supra,* to this case would be erroneous because the facts and circumstances here bring it within at least the first two of the above exceptions. This court has always supported a strong public policy favoring the settlement of disputed claims without litigation. Esser v. Brophey, 212 Minn. 194, 3 N. W. (2d) 3; 3 Dunnell, Dig. (3 ed.) § 1519. To apply the rule in Pangalos to cases like this one would certainly interfere with the policy favoring settlements, since it would leave parties to a consent judgment in doubt on whether their intention as expressed in the settlement agreement will be enforced and thus would have a tendency to impede and embarrass the settlement process. This case also falls within the second exception. Obviously, the application of the rule in Pangalos to bar the city from prosecuting its claim against third-party defendant Leary would be contrary to the intention of the parties to the agreement, since it specifically provides that it shall not affect the right of the city to proceed against him.

Where the parties settle a dispute and a court enters a judgment upon the parties' consent, that judgment is in many ways like a judgment entered after full contest upon a jury verdict or a court's finding. It may be enforced in the same way as any other judgment. It is no more subject to collateral attack. The original claim may become merged in it or barred by it just as that claim would be in a judgment after contest.[2] A consent judgment has been said to have a dual aspect. It represents an

---

entered by agreement or consent or, at least, a decree so entered in equity, cannot have the effect of res judicata.

"The basis of this rule appears to be the theory that a judgment or decree entered by agreement or consent is not pronounced by the court in the exercise of its judicial function but is merely an administrative act recording the agreement of the parties; that no disputed facts are judicially determined thereby, and that it partakes of the nature of a contract.

"In a Louisiana case [Himel v. Connely, 195 La. 769, 197 So. 424] it has been said that a judgment obtained by the consent of all of the parties to a suit gets its binding force and effect from the consent which the parties give, rather than from the doctrine of res judicata."

[2] See, James, *Consent Judgments as Collateral Estoppel,* 108 U. of Pa. L. Rev. 173. See, also, Note, 72 Harv. L. Rev. 1314, 1316 to 1319.

agreement between the parties settling the underlying dispute and providing for the entry of judgment in a pending or contemplated action. It also represents the entry of such a judgment by a court—with all that this means in the way of committing the force of society to implement the judgment of its courts. With respect to the contractual aspect of a consent judgment, it is always relevant in determining the effect of the judgment to ascertain the intent of the parties in accordance with the usual rule for construing their agreements. Their intent having been ascertained, the following questions remain to be answered: First, is there any reason of policy why the law will not implement this intent? Second, will the entry of judgment carry with it an effect beyond the intent of the parties (that is, either an effect counter to it or an effect with respect to which the intent of the parties was neutral)?

The first question may arise in a case where the parties have expressed the intent to be bound collaterally upon a given fact, or in the opposite case, where they have expressed an intent not to be so bound. The rules of res judicata and collateral estoppel do not require that a consent judgment bind the parties to facts which were originally in issue in the action that was settled. Res judicata is a term which has been given a good many different meanings. It includes what has come to be known as collateral estoppel—the effect of a former judgment in a later action based upon a different claim or demand. However, where collateral estoppel is involved, "the inquiry must always be as to the point or question actually litigated and determined in the original action * * *. Only upon such matters is the judgment conclusive in another action." Cromwell v. County of Sac, 94 U. S. 351, 353, 24 L. ed. 195, 198.

Professor James, in *Consent Judgments as Collateral Estoppel,* 108 U. of Pa. L. Rev. 173, 191, suggests that the rule extending collateral estoppel to consent judgments finds perhaps its harshest implications in the field of torts, since in automobile collision cases both parties often suffer some injury and each party's claim for his own injury is nominally against the other. Where there is adequate liability insurance, however, each claim is actually against the other party's insurer. In reality then, there are four rather than two interests involved in these claims. However, if their claims go to litigation, the only parties of record to the

action will in most states be the two individual claimants who will also appear nominally as the defenders against the respective claims. This complex of facts means that any judgment rendered, by consent or otherwise, will appear to be one between the two named parties to the action.

■ Where the agreement upon which a consent judgment is based is fairly to be construed as providing that the parties should be bound collaterally upon a certain point, that agreement will and should generally be given effect. An intention to be bound in this way should not be found, however, unless the language or admissible evidence affirmatively points to it, and such an intention should not be inferred from the circumstance, taken alone, that the agreement or judgment contains a stipulation or recital of the fact's existence. Where the parties to a consent judgment have not agreed to be thus bound, the rules pertaining to the effect of judgments do not require that they should be, and the relevant considerations of policy and expediency require that they should not be.[3]

The prevailing view of modern commentators is that a consent judgment implies no determination by the court of any issues in the case. They contend that this rule is right and that a consent judgment should not be given any effect as collateral estoppel, except in the rare case where it may be fairly said that the parties intended this effect.[4]

It is clear that the stipulation for settlement in this case was limited, as to parties, to Mrs. Smith as plaintiff and the city of St. Paul as defendant. The stipulation clearly provided for a dismissal with prejudice of the city's counterclaim against Mrs. Smith, but upon the understanding that such dismissal should not be construed as an intent to dismiss, release, or discharge the cause of action defendant city has or may have in its third-party action against Leary. The stipulation plainly provided also that the city as third-party plaintiff should amend the third-party complaint to exclude any claim for sums that the city may be liable to pay Mrs. Smith, which includes the amount of the settlement contained in the stipulation. The intent and purpose of the stipulating parties have been clearly and definitely set forth in the stipulation.

---

[3] See, James, *supra*, p. 193.

[4] See, James, *supra*, p. 174; Restatement, Judgments, § 68.

■ The doctrine of res judicata applies only to parties and their privies. James v. James, 85 Colo. 154, 274 P. 816. The relationship between joint tortfeasors is not such as to make the one not sued a party by either privity or representation. Privity depends upon the relation of the parties to the subject matter rather than their activity in a suit relating to it after the event. Participation in the defense because of general or personal interest in the result of the litigation does not make one privy to the judgment. Old Dominion Copper Min. & Smelting Co. v. Bigelow, 203 Mass. 159, 89 N. E. 193, 40 L. R. A. (N. S.) 314. See, also, Bigelow v. Old Dominion Copper Min. & Smelting Co. 225 U. S. 111, 129, 32 S. Ct. 641, 643, 56 L. ed. 1009, 1022, Ann. Cas. 1913E, 875, 877. "Privies" to a judgment are those who are so connected with the parties in estate or in blood or in law as to be identified with them in interest, and consequently to be affected with them by the litigation. In re Smith's Estate, 60 Mont. 276, 299, 199 P. 696, 703; James v. James, *supra.* Here, there is no privity between Mrs. Smith and Rev. Leary.

■ A consent judgment is based wholly on the consent of the parties and there is no judicial inquiry into the facts or the law applicable to the controversy. 3 Freeman, Judgments (5 ed.) § 1350. Moreover, in a consent judgment it is the duty of the court to enter judgment in accordance with the agreement of the parties and the court's authority is limited by the consent or stipulation. Id. §§ 1344, 1348. In Hafner v. Hafner, 237 Minn. 424, 54 N. W. (2d) 854, we said that it is within the inherent power of the court to set aside consent decrees, like judgments by confession, for fraud, mistake, or absence of real consent, citing Elsen v. State Farmers Mutual Ins. Co. 219 Minn. 315, 17 N. W. (2d) 652. The court in the Hafner case further said (237 Minn. 429, 54 N. W. [2d] 858):

"* * * While a consent decree acquires the status of a judgment through the approval of the judge and being recorded by the court, and while the court may look to see that the settlement is fair, the court does not, in a consent decree, judicially determine the rights of the parties. Rather, the decree rests on the consent of the parties; and, in the absence of a retention of jurisdiction (as discussed above), the decree

should not be modified without their actual consent, on the basis of implied consent."

In Minneapolis Gas Light Co. v. City of Minneapolis, 140 Minn. 400, 168 N. W. 588, plaintiff moved to open a consent judgment fixing gas rates under a contract embraced in a Minneapolis ordinance. The ordinance as well as the mutual agreement of the parties as to the rate to be charged was incorporated in the judgment. This court, in affirming the denial of the motion, stated (140 Minn. 403, 168 N. W. 589):

"* * * The fact that the agreement was reported to the court and by it incorporated in the judgment, does not change the situation, nor the rights of the parties. The judgment is not based upon findings of fact nor upon an adjudication of the rights of the parties by the court, but merely gives expression to the contract made by them."

In McRary v. McRary, 228 N. C. 714, 719, 47 S. E. (2d) 27, 31, the North Carolina court said:

"A judgment by consent is the agreement of the parties, their decree, entered upon the record with the sanction of the court. * * * It is not a judicial determination of the rights of the parties and does not purport to represent the judgment of the court, but merely records the pre-existing agreement of the parties."

In Prill v. Illinois State Motor Serv. Inc. 16 Ill. App. (2d) 202, 207, 147 N. E. (2d) 681, 684, the court observed:

"* * * Such judgments are uniformly understood to merely record a settlement or agreement between the parties. They are not a judicial determination of the rights of the parties or the issues involved in litigation. * * * There having been no adjudication of rights and issues in respondent's action against the third party, it is as if settlement without suit had been effected. Under such circumstances, no inferences as to petitioner's freedom from negligence can be legally drawn."

In State v. Huebner, 230 Ind. 461, 467, 104 N. E. (2d) 385, 387, the Indiana court had this to say regarding the entry of consent judgments:

"* * * A consent decree is not a judicial determination of the rights of the parties. It does not purport to represent the judgment of the court, but merely records the agreement of the parties with respect to the matters in litigation."

In Owsiejko v. American Hardware Corp. 137 Conn. 185, 187, 75 A. (2d) 404, 406, the Connecticut court said:

"* * * A consent judgment is a contract between the parties approved by the court, and its terms may not be extended beyond the agreement entered into."

■ Both parties on this appeal have cited Bunge v. Yager, 236 Minn. 245, 52 N. W. (2d) 446, in support of certain contentions in their briefs. The Bunge case arose out of a collision in which one Herbert Dose suffered personal injuries. He brought an action against Yager, in whose car he had been riding as a passenger, and Bunge, alleging that the negligence of both defendants caused his injuries. In a separate answer Bunge denied negligence, alleging that Yager alone was responsible, and Yager interposed a similar answer. The case was tried before a jury and resulted in a verdict for Dose against both defendants. It was affirmed on appeal, this court holding that the evidence was sufficient to sustain a finding of negligence against both. Dose v. Yager, 231 Minn. 90, 42 N. W. (2d) 420. Prior to the trial of the suit brought by Dose, Bunge had instituted a suit against Yager to recover damages as a result of the same collision, and Yager had answered, denying negligence and asserting contributory negligence on the part of Bunge. At the conclusion of the action brought by Dose against Yager and Bunge, Yager served an amended answer, setting up as an additional defense the judgment rendered in the Dose case as a bar to the action brought by Bunge and also alleging that the verdict in the Dose case constituted an estoppel. He thus interposed pleas of estoppel by verdict and estoppel by judgment. Bunge demurred to these defenses and the demurrer was sustained. This court in affirming said (236 Minn. 254, 52 N. W. [2d] 451):

"* * * The rights of co-parties against each other may also be litigated by consent. Here, the two actions might have been consoli-

dated for trial, as is frequently done. Where action is taken in any of these manners so that the co-parties become adversaries in the trial, the determination of their rights and liabilities *inter se* become *res judicata* and may not be relitigated. Our statutes, as well as our new rules, simply provide a method whereby the rights and liabilities of co-parties may be litigated in an action in which they are aligned on the same side of the litigation, thereby preventing a multiplicity of suits. *But where action is not taken to bring co-parties into an adversary relationship, their rights and liabilities as against each other are not determined, nor is the determination of their liability to a third party a bar to a subsequent action by one of the codefendants against the other to recover damages which he may have suffered as a result of the same tort."* (Italics supplied.)

Clearly, a determination of the city's liability to a third person—Mrs. Smith—does not bar its action against third-party defendant Leary to recover damages which the city may have suffered as a result of the same tort.

■ In Burgess v. Consider H. Willett, Inc. 311 Ky. 745, 225 S. W. (2d) 315, the defendant's truck was involved in an accident with a truck of the Milan Box Company. In an earlier suit the box company had sued the defendant. The case was settled and a consent judgment was entered against the defendant. Plaintiffs were passengers in an automobile struck by the box company's truck in the accident. They argued that the consent judgment against the defendant operated as an estoppel or an admission. The court on appeal disagreed. Citing 4 Wigmore, Evidence (3 ed.) §§ 1058, 1059, and 9 Id. §§ 2588 to 2590, the appellate court concluded that the rule seems to be universal that in actions growing out of accidents where two or more persons are injured a compromise with one of the injured persons cannot be shown in an action by the other. The reason for the rule, the court said, is that the law favors the settlement of controversies out of court and if a man could not settle one claim out of court without fear that this would be used in another suit as an admission against him many settlements would not be made.

The question before the court in the instant case is: Was the consent

judgment anything more than a compromise agreement? Plainly, estoppel created by a judgment cannot be extended beyond the issues necessarily determined by the judgment. The Kentucky court in the Burgess case said (311 Ky. 749, 225 S. W. [2d] 317):

"It seems to be generally accepted that a judgment by agreement or consent, since no inquiries are made into the merits or equities of the case by the court, constitutes only the agreement of the parties.

\* \* \* \* \*

"An examination of the consent judgment above immediately impresses one that it is nothing more nor less than a compromise agreement, and as such not admissible as evidence."

The consent judgment involved here is also nothing more nor less than a compromise agreement and therefore not admissible.

■ In Seaboard Air Line R. Co. v. George F. McCourt Trucking, Inc. (5 Cir.) 277 F. (2d) 593, the railroad sued the truck company for damage to a train with which the truck collided at a crossing, and the truck company filed a counterclaim for damages to its truck. A summary judgment was entered dismissing the railroad's suit against the truck company on the basis of estoppel by judgment. The judgment claimed as a bar was a consent judgment entered in favor of the truckdriver's survivors against the railroad. The court in the course of the opinion stated (277 F. [2d] 596):

"If the prior judgment is conclusive of this action, it must be estoppel by judgment since the suits are based on different causes of action. But for estoppel by judgment to foreclose relitigation of *issues* in a subsequent suit, it is essential that the *issue* sought to be foreclosed was actually litigated and determined in the initial action."

The court concluded that the trial court erred in granting the summary judgment in favor of the truck company.

In Hellstrom v. McCollum, 324 Ill. App. 385, 58 N. E. (2d) 295, it was held that a judgment dismissing a suit for damages to plaintiff's automobile, pursuant to the parties' compromise agreement, without a decision on the merits, did not constitute estoppel of record precluding

defendant from bringing suit against plaintiff for damage done to defendant's automobile in the same accident.

The record in this case is clear that third-party defendant Leary was not a party to the stipulation entered into between Mrs. Smith and defendant city in compromise and settlement of Mrs. Smith's original suit against the city. The provisions contained in the stipulation also show that it was not intended to preclude the city from continuing the third-party action against Leary. The granting of Leary's motion for summary judgment was not proper under the rules of res judicata or the rules pertinent to consent judgments. The city is entitled to a reversal of the summary judgment entered in favor of Leary and to have the third-party action remanded for trial between the parties.

Reversed and remanded.