*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0204**

State of Minnesota by its Minnesota Pollution Control Agency,
Respondent,

vs.

Diane C. Anderson, et al.,
Appellants.

**Filed January 9, 2017
Affirmed
Bratvold, Judge**

St. Louis County District Court
File No. 69DU-CV-11-2185

Gerald W. Von Korff, Jonathan D. Wolf, Rinke-Noonan, St. Cloud, Minnesota (for appellant)

Lori Swanson, Attorney General, Ann E. Cohen, Assistant Attorney General, St. Paul, MN (for respondent)

Considered and decided by Worke, Presiding Judge; Jesson, Judge; and Bratvold, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BRATVOLD**, Judge

Appellant Diane Anderson, owner of a waste site, and appellants Dale Cich and J & D Services of Northern Minnesota, Inc., operators of an environmental contracting company on that site, challenge the district court's order holding them jointly and severally

liable for $225,690.79 in cleanup costs, $677,072.37 in civil penalties, and $67,000 in attorney fees after the district court determined, without holding an evidentiary hearing, that they had violated the terms of a consent decree. We affirm because appellants received procedural due process, appellants are jointly and severally liable, and the district court did not abuse its discretion in calculating civil penalties.

**FACTS**

This appeal arises out of appellants' storage of hazardous and non-hazardous waste on a property called the Aurora site.[1] Appellant J & D Services of Northern Minnesota, Inc. (J & D Services), an environmental contracting company, operated a waste removal facility on the Aurora site until the early 2000s when its operations ceased. Appellant Dale Cich is the sole incorporator and chief executive officer of J & D Services.

Between June and December 2000, J & D Services accepted approximately 1,186,700 pounds of waste from LTV Steel Mining Company (LTV) for storage at the Aurora site, with the intention of later recycling the waste. As of 2015, the LTV waste was still being stored on the site and had not been recycled.

In 2005, appellant Diane Anderson acquired ownership of the Aurora site. Cich had purchased the property from the prior owners (who are not parties in this case), and then transferred the property to Anderson as part of a business transaction unrelated to this appeal.

---

[1] The waste stored at the Aurora site was mixed; the record establishes that approximately 35% of the waste was hazardous and 65% was non-hazardous. Because the classification of the waste is not relevant in this appeal, we refer generally to "the waste" in this opinion.

In 2008, respondent Minnesota Pollution Control Agency (MPCA) began investigating the Aurora site after a routine tank inspection revealed waste leaking into the ground. The MPCA notified the U.S. Environmental Protection Agency (EPA), and the EPA issued an administrative order, requiring appellants to submit and complete a plan to clean up the site by May 30, 2010. Appellants signed the EPA order, agreeing to comply with its terms. Appellants did not, however, complete the plan by the deadline and failed to respond to the EPA's request for a revised plan that would have extended the deadline.

In August 2010, the MPCA conducted another investigation of the Aurora site and discovered that appellants were continuing to violate statutes and regulations relating to waste storage. The MPCA then asked the EPA to refer the case back to the MPCA for enforcement.

In December 2010, the MPCA issued an administrative order against appellants, citing hazardous waste and underground- and aboveground-storage-tank violations. The MPCA held Cich and J & D Services responsible for the violations because they operated the waste removal facility on the Aurora site. The MPCA held Anderson responsible because she acquired ownership of the tanks when she acquired the land. The administrative order became final after no party appealed within the 30-day period for seeking judicial review under Minn. Stat. § 14.63 (2016).

Appellants failed to comply with the 2010 administrative order, and in June 2011, the MPCA filed a complaint in district court against appellants, seeking a court order directing appellants to comply with the administrative order. Appellants did not file an answer to the complaint, but indicated their willingness to resolve the alleged violations.

In December 2012, the MPCA, Cich, Anderson, and J & D Services entered into a consent decree. The consent decree settled all disputes among the parties, resolved the allegations in the complaint, and provided a plan for appellants to complete cleanup of the Aurora site by November 15, 2013. The consent decree contained no admissions by appellants to the charges in the complaint. On January 3, 2013, the district court approved the consent decree and directed entry of judgment.

The consent decree contemplated disputes among the parties and the need to enforce its terms. For example, the consent decree provided that, upon written demand of any party, the parties shall attempt to resolve any dispute "as to the meaning of any part of" the consent decree "through informal negotiations." The consent decree also reserved the district court's jurisdiction to enforce, interpret, and extend its provisions and to order any relief not inconsistent with its terms. The consent decree provided that the MPCA may bring a motion for good cause shown and seek appropriate remedies for appellants' noncompliance, including civil penalties under Minn. Stat. § 115.071[2] and litigation costs and expenses arising from willful violations under Minn. Stat. § 115.072.[3] The consent decree further reserved the MPCA's enforcement authority under chapters 115B

---

[2] Section 115.071 allows the MPCA to pursue civil penalties for violations of "any rules, stipulation agreements, variances, schedules of compliance, or orders issued by the [MPCA]." Minn. Stat. § 115.071, subd. 3 (2016).

[3] Section 115.072 provides that the MPCA may recover its litigation expenses if it prevails in pursuing civil penalties under chapter 115 and the defendant's violation is willful. Minn. Stat. § 115.072 (2016).

(Environmental Response and Liability Act) and 115C (Petroleum Tank Release Cleanup Act) if appellants failed to comply with the decree.[4]

On May 20, 2013, Cich requested an extension of time to complete cleanup at the Aurora site because "late winter snow storms and road restrictions" had delayed the cleanup. In a letter to Cich and Anderson, the MPCA denied the extension request because Cich had not shown good cause, as required in the consent decree.

Cich submitted a written request for "dispute resolution" regarding the denial of his extension request. The parties met and agreed that Cich could "submit information concerning the nature of the waste, a schedule, and financial information," and that Cich would continue work on the site in the interim. After Cich failed to submit the promised information, the MPCA formally denied Cich's extension request in an administrative order.

On October 25, 2013, the MPCA met with Cich to discuss the deteriorating conditions at the Aurora site after an MPCA inspection revealed that some of the buildings in which the waste was being stored had been broken into and people had been "squatting" in the buildings. In a follow-up letter addressed to Cich and Anderson, the MPCA warned that it would exercise its statutory authority to begin an emergency cleanup of the Aurora site if appellants failed to complete the cleanup and that it would seek recovery of the associated cleanup costs from Anderson and Cich. The MPCA delayed emergency

---

[4] The Environmental Response and Liability Act and the Petroleum Tank Release Cleanup Act give the MPCA authority to take emergency corrective action to address releases of pollutants that the MPCA deems to be a danger to the public health or environment. Minn. Stat. § 115B.17, subd. 1(b) (2016); Minn. Stat. § 115C.03, subd. 3 (2016).

5

proceedings, however, because Cich told the MPCA that he still intended to complete the cleanup.

After the October 2013 meeting, the MPCA received analytical results and a work plan from a consultant that Cich had hired to help remove the waste. In early 2014, the MPCA was notified that Cich had removed some of the waste from the site. On March 20, 2014, the MPCA sent appellants a letter, warning that it would begin emergency cleanup if appellants did not resume weekly shipments of the waste from the site. Appellants did not respond to the letter.

By August 2014, appellants still had not completed the cleanup, despite receiving extra time to comply with the consent decree that had set a November 2013 deadline. In fact, the problems at the site "had gotten worse." MPCA inspector Kit Grayson stated in an affidavit filed in the district court that, in July 2014, he saw tanks leaking waste on another property that Cich owns. Grayson recognized the tanks as identical to the tanks that were on the Aurora site. Grayson stated that Cich admitted to moving waste from the Aurora site to the other property, even though the other property was an unauthorized storage and disposal location. Grayson also stated that Cich's actions violated the consent decree.

On August 8, 2014, relying on the consent decree, the MPCA filed a motion in the district court to hold appellants liable for: (a) the cleanup costs that the MPCA would incur in cleaning up the site under its emergency enforcement authority; (b) civil penalties; and (c) attorney fees. In support of its motion, the MPCA submitted Grayson's affidavit

describing appellants' noncompliance with the terms of the consent decree and the conditions at the Aurora site.

The district court conducted a hearing on the MPCA's motion. Appellants did not submit written evidence in response, but they were represented by an attorney. Appellant's attorney requested informal dispute resolution under the consent decree and an evidentiary hearing at which appellants and other witnesses could testify. The MPCA opposed both requests, asserting that it had already completed informal dispute resolution with appellants, including giving them extra time and multiple opportunities to comply with the consent decree.

On October 28, 2014, the district court granted the MPCA's motion. The district court credited Grayson's affidavit, and found that appellants had willfully failed to comply with the consent decree. The district court denied appellants' request for informal dispute resolution because Grayson's affidavit documented the MPCA's considerable efforts "to have consistent and reliable communication with" appellants. It also denied appellants' request for an evidentiary hearing because appellants made their argument "on the spur of the moment, without any evidentiary or legal support." Lastly, the district court determined that the MPCA was entitled to cleanup costs, civil penalties, and attorney fees under the terms of the consent decree, and it ordered appellants jointly and severally liable for all three remedies. The district court reserved determination of the amount until after the MPCA finished the cleanup.

After completing the emergency cleanup at the Aurora site, the MPCA asked the district court to enter judgment against appellants for $225,690.79 in cleanup costs,

$1,322,500 in civil penalties, and $67,000 in attorney fees. With its motion, the MPCA submitted a second affidavit from Grayson, a certificate of expenses, and a legal memorandum.

The district court conducted a hearing to determine the amount the MPCA was entitled to receive. On the day of the hearing, appellants submitted four witness affidavits and a written memorandum opposing the MPCA's motion. Cich and Anderson also submitted separate letters explaining why they should not be liable for civil penalties. Anderson asserted that the waste had been transferred to the Aurora site before she acquired the land, and she was never involved with J & D Services's waste disposal business. Cich asserted that he could not afford a large civil penalty because LTV, who delivered the waste, never paid J & D Services to dispose of the waste. He also stated that Anderson had nothing to do with the waste. At the hearing, appellants' counsel argued that appellants were entitled to an evidentiary hearing because the MPCA's motion was the equivalent of a summary-judgment motion and there were genuine fact disputes that required live testimony.

On September 28, 2015, the district court ordered appellants jointly and severally liable for $225,690.79 in cleanup costs, $677,072.37 in civil penalties, and $67,000 in attorney fees. The district court denied appellants' request for an evidentiary hearing because they had agreed in the consent decree to be liable for any noncompliance and to allow the MPCA to seek enforcement and other remedies by bringing a motion in the district court. This appeal follows.

8

**D E C I S I O N**

## I. Procedural Due Process

The United States and Minnesota Constitutions guarantee the due process of law. U.S. Const. amend. XIV, § 1; Minn. Const. art. 1, § 7. Whether the government has violated a person's procedural due process rights is a question of law that this court reviews de novo. *Sawh v. City of Lino Lakes*, 823 N.W.2d 627, 632 (Minn. 2012). There is "a two-step analysis to determine whether the government has violated an individual's procedural due process rights." *Id.* The first step is to "identify whether the government has deprived the individual of a protected life, liberty, or property interest." *Id*. If no such interest is deprived, then no process is due. *Id*. If a protected interest has been deprived, then the second step is to determine "whether the procedures followed by the government were constitutionally sufficient." *Id*. (quotation omitted).

Appellants satisfy the first step of the due process analysis because imposition of costs, penalties, and fees deprives appellants of their property. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 571–72, 92 S. Ct. 2701, 2706 (1972) ("[P]roperty interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money.").

Under the second step, this court must determine whether the process provided was sufficient, balancing the three factors set forth in *Mathews v. Eldridge*: (1) "the private interest at stake"; (2) "the risk of an erroneous deprivation of a protected interest under current procedures and the probable value, if any, of additional safeguards"; and (3) "the government's interest, including the fiscal and administrative burdens that would be

9

required to impose additional or substitute procedural requirements." *Sawh*, 823 N.W.2d at 633–35; *see Mathews*, 424 U.S. 319, 321, 96 S. Ct. 893, 896 (1976).

We review each *Mathews* factor to determine whether appellants received procedural due process. First, the private interest at stake is money, which is constitutionally protected as property. *Roth*, 408 U.S. at 571–72, 92 S. Ct. at 2706. The amount of money at stake in this case—nearly one million dollars—substantiates appellants' property interest. Thus, the first factor weighs in favor of appellants.

The second factor is the risk of "erroneous deprivation of a protected interest" and the likely benefit of "additional safeguards." *Sawh*, 823 N.W.2d at 634. The district court in this case held appellants liable under the consent decree. A consent decree is essentially a contract, subject to contract-law principles. *Elsen v. State Farmers Mut. Ins. Co.*, 219 Minn. 315, 318–19, 17 N.W.2d 652, 655 (1945); *City of Barnum v. Sabri*, 657 N.W.2d 201, 205 (Minn. App. 2003) ("A consent decree, while prospective in its effect, is the product of a negotiated agreement similar [to] a contract.").

By signing the consent decree, appellants settled the statutory and regulatory violations alleged in the complaint. Different from a settlement agreement, however, the consent decree is filed, approved, and signed by the district court, and entered as a judgment. *Hentschel v. Smith*, 278 Minn. 86, 95, 153 N.W.2d 199, 206 (1967). Because the consent decree was approved by the district court, it has the same res judicata effect as a final judgment. *Id.* at 92, 153 N.W.2d at 204 (the effect of the entry of a consent judgment is that "[t]he original claim may become merged in it or barred by it just as that claim would be in a judgment after contest"); *see also State Bank of New London v. W. Cas. & Sur. Co.*,

10

287 Minn. 339, 343, 178 N.W.2d 614, 617 (1970) ("[A] valid judgment, decree, or an order . . . entered by agreement or consent, operates as res judicata to the same extent as if it had been rendered after contest and full hearing, is binding and conclusive upon the parties."). In the consent decree, appellants agreed that they would clean up the Aurora site, that cleanup costs, civil penalties, and attorney fees were appropriate remedies if they failed to comply, and that the MPCA could pursue such remedies through an appropriate motion upon good cause shown in the district court.

Appellants do not contest that they failed to clean up the Aurora site according to the terms of the consent decree, nor do they contest that the MPCA had good cause to bring a motion to enforce the terms of the consent decree. Appellants contend, however, that an evidentiary hearing was necessary so they could provide testimony about their good faith efforts to clean up the Aurora site. Appellants also argue that the district court could have weighed their credibility at an evidentiary hearing.

"The judicial model of an evidentiary hearing is neither a required, nor even the most effective, method of decisionmaking in all circumstances." *Mathews*, 424 U.S. at 322, 96 S. Ct. at 897; *see also State v. LeDoux*, 770 N.W.2d 504, 514 (Minn. 2009) ("Due process does not always require a full evidentiary hearing."). It is within the district court's discretion to decide whether any testimony should be received. *See, e.g.*, *Rew v. Bergstrom*, 845 N.W.2d 764, 787–88 (Minn. 2014) (holding there was no procedural due process violation when the district court declined to hear testimonial evidence).[5]

---

[5] Appellants cite *United States v. Reilly Tar & Chem. Corp.* for the proposition that denial of "a good faith assertion of one's rights is per se a violation of due process." 606 F. Supp.

11

Here, appellants were given the opportunity to argue and present evidence. They argued in opposition to the MPCA at two hearings, and, although appellants could have submitted evidence during the 2014 liability hearing, they chose not to. At the 2015 penalty hearing, appellants filed a legal memorandum and four sworn witness affidavits, and Cich and Anderson each submitted letters. The district court also held the record open for two weeks after the 2015 penalty hearing so that the parties could submit additional evidence and affidavits, which they did.

Relying on evidence submitted at the 2015 penalty hearing, appellants argued to the district court that they did not have the resources to complete the cleanup within the time frame provided in the consent decree, and that LTV should be held responsible for the cleanup. They also asserted that the MPCA inflated the requested cleanup costs and failed to complete the cleanup, leaving barrels on the property. Appellants also claimed that Anderson should not be held liable because she was not involved with the waste disposal business and was merely the landowner.

The district court considered appellants' evidence and weighed the credibility of the statements in the affidavits. *See Knapp v. Knapp*, 883 N.W.2d 833, 838 (Minn. App. 2016)

---

412 (D. Minn. 1985). The MPCA argues that this court need not consider this "novel argument" because it was not presented in the district court. We disagree with the MPCA because appellants preserved the due process issue for appeal and have merely cited new legal authority. In any event, *Reilly Tar* does not support appellants' position. *Reilly Tar* did not involve a consent decree; rather, *Reilly Tar* held that a severe statutory civil penalty does not violate procedural due process if the defendant is given the opportunity to assert a good faith defense to liability. 606 F. Supp. at 418–22. In this case, appellants had an opportunity to assert a good faith defense to the penalty. *Reilly Tar* does not hold that the district court must allow the defendant an evidentiary hearing at which to present a good faith defense.

12

(deferring to the district court's weighing of conflicting affidavits). Appellants have not demonstrated how live testimony would have added to the process they received. Moreover, the procedures available to appellants in this case are consistent with due process under existing caselaw. *See Bergstrom*, 845 N.W.2d at 789 (noting the "procedural safeguards" such as "notice, an adversarial hearing in the district court, and the opportunity for appellate review that adequately protect [the appellant's] liberty interest"); *Saturnini v. Saturnini*, 260 Minn. 494, 498, 110 N.W.2d 480, 483 (1961) ("Due process requires that the hearing be fair, practicable, and reasonable.").[6]

Appellants have failed to articulate how the process they received risked "erroneous deprivation" of their protected interest or "the probable value, if any, of additional safeguards." Appellants are understandably opposed to the district court's decision, but their failure to make a meaningful argument under the second *Mathews* factor is critical. *See Bergstrom*, 845 N.W.2d at 789 (only briefly reviewing the third *Mathews* factor because the court concluded that the appellant failed to make a showing under the second factor).

Turning to the third and final *Mathews* factor, the government's interest, appellants argue that allowing testimonial evidence would have imposed a minor burden on the government and would not have delayed the MPCA's cleanup. Even taking this assertion

---

[6] Appellants argue that *Tull v. United States* supports their due process claim. 481 U.S. 412, 107 S. Ct. 1831 (1987). *Tull* held that a defendant has a right under the Seventh Amendment of the U.S. Constitution to have a jury determine liability under the Clean Water Act's civil penalty provision. *Id.* at 422–25, 107 S. Ct. at 1838–40. *Tull* is inapposite because the Clean Water Act's civil penalty provision differs from the Minnesota statute and there was no consent decree.

13

as true, appellants fail to acknowledge that the MPCA has expended considerable time and resources working with appellants since 2008 in repeated attempts to clean up the Aurora site. Appellants were given multiple opportunities to clean up the waste, including informal dispute resolution, and were given extra time after the November 2013 cleanup deadline in the consent decree. Viewing the third factor cautiously, we conclude it does not weigh in favor of either party because both sides have reasonable arguments.

In sum, appellants have an important private interest at stake under the first *Mathews* factor, but their failure to make a showing under the second *Mathews* factor is critical to our decision. Appellants had ample notice and opportunity to be heard and have not shown that the process provided was constitutionally insufficient. *Sawh*, 823 N.W.2d at 632 ("[T]he basic requisites of due process [are] notice and the opportunity to be heard."). Accordingly, the three *Mathews* factors, on balance, do not support appellants' due process claim and we conclude that appellants' procedural due process rights were not violated.

## II. Joint and Several Liability

Anderson contests the district court's decision to hold her jointly and severally liable for the remedies awarded under the consent decree. Cich and J & D Services do not dispute their liability.

A consent decree is an agreement among the parties, subject to contract-law principles. *Elsen*, 219 Minn. at 318–19, 17 N.W.2d at 655; *Sabri*, 657 N.W.2d at 205–06. "Contract interpretation is a question of law that we review de novo." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 832 (Minn. 2012). "[W]here the language employed by the parties is plain and unambiguous there is no room for construction." *Starr*

14

*v. Starr*, 312 Minn. 561, 563, 251 N.W.2d 341, 342 (1977). As such, this court will "enforce the agreement of the parties as expressed in the contract." *Caldas*, 820 N.W.2d at 832. When the district court interprets a judgment or decree that it entered, the district court's "reading of the provision is entitled to great weight." *Suleski v. Rupe*, 855 N.W.2d 330, 339 (Minn. App. 2014) (quotation omitted).

When a party signs a consent decree, and a court enters judgment, the party forfeits its right to litigate the underlying statutory and regulatory allegations, including any defenses. *Bank of New London*, 287 Minn. at 343, 178 N.W.2d at 617 (stating that a consent judgment is a final adjudication and has the same effect as a judgment entered "after contest and full hearing"). Thus, to the extent that Anderson contests the MPCA's allegation that she is a defendant that is liable to clean up the Aurora site, Anderson's opportunity to have made this argument was before she signed the consent decree, not at the penalty phase. Anderson concedes that it is too late for her to contest the validity of the consent decree because she did not challenge the district court's judgment incorporating the consent decree within the applicable time period for appealing a final judgment. *See* Minn. R. Civ. App. P. 104.01, subd. 1 (appeal from final judgment must be taken within 60 days after its entry). Therefore, Anderson's only defense to liability for the civil penalties turned on whether she complied with the terms of the consent decree.

The consent decree reserves the district court's authority to interpret, enforce, or extend the provisions of the consent decree. It also gives the district court authority to grant any relief not inconsistent with the terms of the consent decree upon motion by either party for good cause shown. In the 2014 liability order, the district court determined that

15

appellants had failed to comply with the terms of the consent decree, and their noncompliance was willful. Accordingly, the district court decided that holding all three appellants jointly and severally liable for the cleanup costs, civil penalties, and attorney fees was not inconsistent with the terms of the consent decree.

We conclude that the district court did not err in holding Anderson jointly and severally liable for several reasons. First, the consent decree imposes the same obligation on all three appellants. Because Anderson signed the consent decree, she is subject to its terms and enforcement provisions to the same extent as Cich and J & D Services.

Second, all three remedies awarded in this case were authorized in the consent decree. The consent decree unambiguously provides for civil penalties and reimbursement of litigation expenses as remedies for noncompliance with its terms. While the consent decree does not specify liability for attorney fees, it cites statutes that authorize the MPCA to seek attorney fees and penalties. It also reserves the MPCA's authority to initiate an emergency cleanup under chapters 115B and 115C and to seek recovery of cleanup costs if appellants fail to comply with the consent decree.

Anderson argues that the district court wrongly imposed liability because she is an "innocent landowner." Anderson asserts that "the agency must establish clearly and convincingly that the party is not only 'responsible' within the meaning of [chapter 115B], but that there are facts which justify imposition of a penalty." Relying on a law review article and government websites, Anderson contends that imposing a large penalty on the person who is least able to pay runs contrary to the legislature's intent under chapter 115B.

The MPCA argues that this court need not consider Anderson's innocent-landowner argument because she is raising it for the first time on appeal. In her letter to the district court, Anderson asserted, without relying on legal authority, that she should not be held responsible for the cleanup at the Aurora site because she has never been involved in the waste disposal business and the waste was deposited on the land before she acquired the property. Anderson's letter preserved the issue for appeal, and Anderson's appellate brief is merely citing new authority to support the same argument she made in the district court.

In any event, Anderson's innocent-landowner argument fails. By signing the consent decree, Anderson settled the underlying claims in the complaint and agreed to be responsible for the cleanup, as well as potentially responsible for the MPCA's enforcement of the consent decree, including civil penalties. Thus, Anderson is bound by the terms of the consent decree, and the chapter 115B provisions establishing who is a "responsible" party are not relevant.

Anderson also argues that the MPCA should have pursued an action against LTV. The MPCA is given broad discretion in determining the best enforcement action under chapter 115B. *See State ex rel. Pollution Control Agency v. U.S. Steel Corp.*, 307 Minn. 374, 379, 240 N.W.2d 316, 319 (1976) ("[W]e are convinced that the legislature recognized that the effective and expeditious control of a serious environmental problem requires that those entrusted with the enforcement of our pollution control laws be provided a broad range of remedies from which they are free to select those they deem most appropriate."). Further, the MPCA may hold "responsible" parties strictly liable, jointly and severally, for costs associated with the agency's cleanup. Minn. Stat. § 115B.04, subd. 1 (2016). Thus,

the MPCA was not required to sue all potential defendants because just one defendant may be held strictly liable for the all of the cleanup costs. Accordingly, the district court did not err in holding Anderson jointly and severally liable for the cleanup costs, civil penalties, and attorney fees.

### III.     Civil Penalty Assessment

This court reviews a district court's assessment of a civil penalty for an abuse of discretion. *Gillson v. State Dep't of Nat. Res.*, 492 N.W.2d 835, 843 (Minn. App. 1992). The district court's factual findings are reviewed for clear error. *Rasmussen v. Two Harbors Fish Co.*, 832 N.W.2d 790, 797 (Minn. 2013). Factual findings are not clearly erroneous if, after viewing the evidence in the light most favorable to the factfinder's determination, there is reasonable evidence in the record to support the findings. *Id.*

Appellants dispute the amount of civil penalties, arguing that the district court's method of calculating civil penalties and its factual determinations underlying its penalty award are clearly erroneous. In determining the civil penalty award, the district court made factual findings on four factors set forth in *State by Humphrey v. Alpine Air Products, Inc.* 490 N.W.2d 888, 897 (Minn. App. 1992) (identifying factors to consider in determining size of penalty for state consumer protection and antitrust violations). First, the district court found that appellants' violation of the consent decree was done in bad faith because they willfully failed to comply with the consent decree. Second, the district court determined that appellants' failure to clean up the Aurora site caused an injury to the public because their conduct made the Aurora site worse.

18

Third, the district court determined that appellants have the ability to pay. The district court considered appellants' affidavits and letters in which they claimed that they could not afford a large monetary liability because LTV had not paid J & D Services. The district court concluded, however, that appellants' affidavits suggest that they have other financial resources because they run other businesses, although the district court acknowledged that appellants provided no information regarding whether these businesses are profitable. The district court discredited appellants' assertion that they lacked the ability to pay, but also stated that there was "no solid information, one way or the other, on how much" appellants could pay.

Fourth, the district court found that it is unclear whether appellants received any benefit from violating the consent decree, other than delaying the cleanup. The district court credited an affidavit of a former J & D Services employee who stated that LTV failed to pay J & D Services for its waste disposal services because LTV filed for bankruptcy.

The district court also explained its calculation of the penalty amount. The maximum statutory penalty is $25,000 per day for hazardous waste violations and $10,000 per day for non-hazardous waste violations. Minn. Stat. § 115.071, subd. 3. The district court determined that the maximum statutory penalty it could impose against appellants was $2,645,000. This calculation was based on per-day violations starting on the date that appellants were in noncompliance with the consent decree and excluding the winter months. The district court also weighed the per-day violations based on the percentage of the waste that had been classified as hazardous and non-hazardous waste.

19

The district court decided, however, that the maximum statutory penalty was not "a sensible way to assess the civil penalty." It believed "that, in a case like this, civil penalties should bear some relationship to the actual cleanup cost." The district court concluded that, by tying the penalty to the cleanup costs, the penalty would deter future similar conduct. Therefore, the district court trebled the cleanup costs and imposed civil penalties of $677,072.37.

Appellants make three arguments contesting the district court's penalty award. First, appellants contend that the district court did not make sufficient factual findings under the fourth *Alpine Air* factor, the benefit to the defendant. The district court acknowledged that appellants did not seem to have benefitted from violating the consent decree, except for the apparent benefit of delaying cleanup. Although this factor seems to weigh in favor of mitigating the penalty, the district court did not abuse its discretion because the other three factors weighed in favor of the penalty.

Second, appellants dispute the district court's factual determination under the third *Alpine Air* factor that they have the ability to pay the penalty. The district court discredited appellants' assertion that they lacked the ability to pay, finding that appellant's affidavits suggested that they run other businesses. We defer to the district court's opportunity to weigh credibility. Minn. R. Civ. P. 52.01 (stating that this court gives due regard "to the opportunity of the trial court to judge the credibility of the witnesses"); *Knapp*, 883 N.W.2d at 838.

Third, appellants assert that the district court failed to consider evidence establishing that Cich went "to great lengths to find a way to dispose of the waste lawfully." Appellants

appear to argue that Cich's efforts should have mitigated the penalty amount. But the district court's determination that appellants willfully failed to comply with the consent decree is supported by the record. We therefore conclude that the district court's consideration of the four *Alpine Air* factors and its decision to impose a civil penalty award that is far less than the statutory-maximum was not an abuse of discretion.

**Affirmed.**